Argued and submitted September 20, 1983, affirmed January 25, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# DONALD EUGENE SMITH,
*Appellant.*

## (M268984; CA A28187)

675 P2d 510

Robert G. Thuemmel, Portland, argued the cause and filed the brief for appellant.

Stephen E. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals from his conviction for driving while under the influence of intoxicants. At trial, evidence was introduced that his breathalyzer test produced a blood alcohol reading of .23 percent.[1] He contends that reversible error was committed by admitting in evidence two documents certifying that the breathalyzer equipment was in proper operating order,[2] without requiring the individual who actually inspected the equipment to testify. He claims that the certificates of breathalyzer inspections are inadmissible hearsay and encompass expert testimony. We discuss only the hearsay contention.

Defendant concedes that the certificates of breathalyzer inspections would be public records and admissible under OEC 803(8) as an exception to the hearsay rule if it were not for an exclusion found in OEC 803(8)(b), which provides, in pertinent part:

"The following are not excluded by Rule 802 of this Act, even though declarant is available as a witness:

"* * * * *

"* * * Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth:

"* * * * *

"(b)   Matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, *excluding however, in criminal cases matters observed by police officers and other law enforcement personnel * * *.*" (Emphasis supplied.)

---

[1] At the relevant time, ORS 487.545 provided, in part:

"(1)   At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than .10 percent by weight of alcohol as shown by chemical analysis of the person's breath, blood or urine, it is indirect evidence that may be used with other evidence, if any, to determine whether or not the person was then under the influence of intoxicants.

"(2)   Not less than .10 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor."

[2] ORS 487.815(3)(c) requires that the state police employ trained personnel to certify the accuracy of the breathalyzer machines at intervals of not more than 90 days.

Essentially, defendant argues that OEC 803(8)(b) excludes the certificates of breathalyzer inspections, because the individual conducting the inspection was "law enforcement personnel" and the certificates relate to "matters observed" in connection with a "criminal case." The state points out that, before the enactment of OEC 803(8), a certified copy of official records of breathalyzer equipment inspections was admissible as a public record. *State v. Coffman,* 11 Or App 307, 502 P2d 605 (1972); *State v. Woodward,* 1 Or App 338, 462 P2d 685 (1969). It goes on to argue that the law in that regard has not been changed by the enactment of OEC 803(8).

In 1981, the Oregon Legislature adopted a comprehensive evidence code, based to a significant extent on the Federal Rules of Evidence. Although there were some deviations from the federal rules, one rule adopted virtually without change was FRE 803(8)(B).[3] The legislative history of a federal act, as well as decisions construing its provisions, are persuasive in construing a state statute that adopts substantially the same terms as the federal act. *See U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 542 P2d 900 (1975); *Karsun v. Kelley,* 258 Or 155, 482 P2d 533 (1971); *Santiam Fish & Game Ass'n v. Tax Com.,* 229 Or 506, 368 P2d 401 (1962); *Everts v. Holtmann,* 64 Or App 145, 667 P2d 1028 (1983).

■ We conclude that, in adopting FRE 803(8)(B), Congress did not intend to change the common law rule allowing admission of public records of purely "ministerial observations." Rather, Congress intended to prevent prosecutors from attempting to prove their cases through police officers' reports of their observations during the investigation of crime. *United States v. Grady,* 544 F2d 598, 604 (2d Cir 1976). We infer that the state legislature adopted OEC 803(8)(b) with the same intent.

In *U.S. v. Union Nacional de Trabajadores,* 576 F2d 388 (1st Cir 1978), the prosecution sought to prove service of

---

[3] FRE 803(8)(B) provides, in pertinent part:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * * (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel * * *."

process by introducing a certified copy of the marshal's return, which stated that he had served an injunction on defendant through an individual officer of the corporation. Defendant objected to the admissibility of the document, claiming that it was hearsay under the codification of the "official records" exception in FRE 803(8)(B). Finding no merit in defendant's argument, the court stated:

"* * * A sheriff or marshal reporting the service of process is not reporting in the capacity of a police observer at the scene of a crime, nor is he ordinarily connected with the case in a law enforcement capacity. The 'adversarial' circumstances which might render a law enforcement officer's observations unreliable are unlikely, therefore, to be present:

" 'Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.'

"S. Rep. No. 1277, 93d Cong., 2d Sess., reprinted in 4 U.S. Code Cong. & Admin. News, pp. 7051, 7064 (1974). In the present case, the injunction was served, and the return of service endorsed, at a time well prior to the alleged contemptuous acts for which appellants were prosecuted. There could have been no motive to falsify for the reason suggested in the above-quoted Senate Report." 576 F2d at 391.

Similarly, the certificates of breathalyzer inspections do not concern observations by the police officers in the course of a criminal investigation. Rather, they relate to the routine function of testing breathalyzer equipment to insure that it gives accurate readings. *See United States v. Grady, supra,* 544 F2d at 604. The testing and certification under ORS 487.815(3)(c) is not done in the adversarial context of a particular case that might cloud law enforcement personnel's perception. A review of the congressional debate reveals that FRE 803(8)(B) was intended to preclude only the admission of police reports made in the course of investigation of a particular crime in lieu of the officers' in court testimony, not records of routine, nonadversarial matters such as those in question here. *United States v. Orozco,* 590 F2d 789, 793 (9th Cir 1979).[4]

---

[4] Defendant's argument rests almost entirely on *United States v. Oates,* 560 F2d 45 (2d Cir 1977). That case is distinguishable from the one before us. The defendant in

■     We hold that the certificates of breathalyzer inspections are admissible under the public records exception to the hearsay rule. OEC 803(8)(b).[5]

■     Defendant contends that the trial court erred in sustaining the state's objections to his impeachment of the arresting officer from the police training manual. This evidence was excluded because the defense could not show the arresting officer had ever read or been taught the section defendant was attempting to use to impeach. Defendant also contends that the trial court erred in sustaining the state's objections to defendant's line of questioning on cross-examination of the arresting officer's knowledge of alcohol absorption and dissipation rates. Defendant argued that the arresting officer was qualified as an expert witness and therefore should be able to testify as to his knowledge of alcohol absorption and dissipation rates. The trial court correctly rejected these arguments. There was no error.

Affirmed.

---

*Oates* was tried for possession of heroin. The government introduced the worksheet of a United States Customs chemist who had analyzed heroin seized from the defendant's cohort. Plainly, the worksheet was adversarial, not ministerial. Unlike the Intoxilyzer certification, it was prepared for a specific criminal case against a specific defendant and was the result of a particular investigation.

[5] The state argues that the certificates of inspection are also admissible under OEC 803(8)(a). Because we have held that the certificates are admissible under OEC 803(8)(b), we need not decide whether they would have been admissible under any other exception to the hearsay rule.