STATE OF HAWAII, Plaintiff-Appellee, *v.* EDWARD T. HAMASAKI, Defendant-Appellant

NO. 13669

(TRAFFIC NO. W43830)

DECEMBER 1, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant-appellant Edward T. Hamasaki (Defendant) challenges his driving under the influence of intoxicating liquor (DUI) conviction pursuant to Hawaii Revised Statutes (HRS) § 291-4(a)(l) (1985) (driving while under the influence) and HRS § 291-4(a)(2) (1985) (driving with a blood alcohol level of 0.10 percent or more).[1] Defendant contends that the trial court erred (1) in admitting into evidence the test result obtained from a breath-testing instrument, an intoxilyzer model 4011AS (Intoxilyzer), because the State of Hawaii (State) failed to show strict compliance with the State Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration (Rules), and (2) in denying his motion for judgment of acquittal[2] based on the State's failure to prove a certain element of the offense. We affirm the conviction.

I.

On April 24, 1987, Defendant was arrested for DUI. At the Honolulu Police Station, he consented to take a breath test. The Intoxilyzer test result indicated a blood alcohol concentration (BAC) of 0.173 percent.

At the bench trial, Honolulu Police Department criminalist Milton Hong (Hong), a certified Intoxilyzer operator-supervisor, testified that he conducted calibration testing of the Intoxilyzer on April 22, 1987, and May 7, 1987. Hong stated that, on both dates, he used two reference samples of 0.05 percent and 0.30 percent

---

[1] Hawaii Revised Statutes (HRS) § 291-4(a) (1985) reads in its entirety as follows:

Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

    (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

    (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] At the bench trial, defendant-appellant Edward T. Hamasaki (Defendant) "move[d] for dismissal" after both parties had rested. The proper motion was one for judgment of acquittal under Hawaii Rules of Penal Procedure Rule 29(a).

alcohol concentrations, respectively, to test the Intoxilyzer. He further testified that these samples were of a known temperature of 34 degrees centigrade, "as required in the testing procedure." Trial Transcript, Vol. 2 at 11. On cross-examination, Hong testified as follows:

> Q   Now, in the preparation of this reference sample, what happens is that there will be a vapor formed above the solution between the liquid portion and the cover; is that correct?
> A   That is correct.
> Q   Of the simulator device?
> A   That is correct.
> Q   All right. What is the temperature of that vapor?
> A   I wouldn't know. I've never taken that temperature.
> Q   Well, Mr. Hong, that vapor is what is pumped into the sample chamber of the Intoxilyzer, is that correct, to make the analysis as to the accuracy of the simulator?
> A   Yes, sir.

*Id.* at 19-20.

Defendant objected to the admission of the Intoxilyzer test result on the foundational ground that Hong failed to determine the temperature of the vapors of the reference samples. The trial court admitted the test result into evidence over Defendant's objection.

After both parties had rested, Defendant moved for a judgment of acquittal on the DUI offense under HRS § 291-4(a)(2). He argued that the State had failed to prove that his BAC, by *weight* of alcohol, was 0.173 percent. The court denied the motion and found Defendant guilty of DUI.[3]

II.

In *State v. Souza,* 6 Haw. App. 554, 559, 732 P.2d 253, 257 (1987), we held that:

[I]n meeting the foundational prerequisites for the admission of

---

[3] In finding Defendant guilty of DUI under HRS § 291-4(a)(l), the trial court stated that it "needed the results of the Intoxilyzer to come to that conclusion." Trial Transcript, Vol. 2 at 37. Therefore, although Defendant's appeal is directed solely to the conviction under HRS § 291-4(a)(2), the success of the appeal would also result in overturning the conviction under HRS § 291-4(a)(l).

the Intoxilyzer test result there must be a showing of strict compliance with those provisions of the Rules which have a direct bearing on the validity and accuracy of the test result. [Footnote omitted.]

Relying on *Souza,* Defendant asserts that because the State failed to produce any evidence with respect to the "known temperature" of the vapors of the two reference samples, as required by § 11-111-2.1(k) of the Rules, the Intoxilyzer test result should not have been admitted into evidence. We disagree.

The Rules require calibration testing of a breath-testing instrument "not less frequently than every thirty days[.]" § 11-111-2.1(j)(2). Section 11-111-2.1(k) of the Rules provides:

The recommended calibration testing method shall use a minimum of two reference samples of known alcohol concentration *at a known temperature* within the range of one hundredths to thirty hundredths per cent weight per volume or higher known alcohol concentrations that are recommended by the breath testing instrument's manufacturer. The results of the analysis shall agree with the reference sample value within the limits of plus or minus one hundredths per cent weight per volume or such limits as set by the director. [Emphasis added.]

We concur with Defendant that § 11-111-2.1(k) of the Rules has a direct bearing on the accuracy of the Intoxilyzer test result. Thus, there must be strict compliance with its provisions. However, we do not agree with Defendant that § 11-111-2.1(k) requires that the *vapors* of the two alcohol reference samples be at a known temperature. That section clearly requires that *the two reference samples* used for calibration testing of the Intoxilyzer *be at a known temperature.*

Hong's testimony established that the two reference samples he used were at a known temperature of 34 degrees centigrade. Accordingly, there was strict compliance with § 11-111-2.1(k) of the Rules, and the trial court did not err in admitting the Intoxilyzer test result into evidence.

### III.

HRS § 291-4(a)(2) provides that a person commits a DUI offense if he drives a vehicle "with 0.10 per cent or more, by weight of

alcohol in the person's blood." HRS § 291-5(a) (1985) states that 0.10 percent or more "by weight of alcohol in the defendant's blood within three hours after the time of the alleged violation . . . shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged offense." The percentage of alcohol in a person's blood may be measured in terms of "percentage by volume" or "percentage by weight." 3 R. Erwin, *Defense of Drunk Driving Cases* § 26.06 (3d ed. 1989).

Defendant argues that the State failed to present any evidence that the Intoxilyzer test result of 0.173 percent was "in terms of weight or anything else." Consequently, he claims that this was a fatal flaw in the State's proof of the DUI offense under HRS § 291-4(a)(2), and therefore the trial court should have granted his motion for judgment of acquittal. We hold that the trial court did not err in ruling that "the [BAC] reading in this case was by weight." Trial Transcript, Vol. 2 at 37.

Hong testified that if the Intoxilyzer operator follows step-by-step the instructions in the Honolulu Police Department Intoxilyzer Operational Checklist, the Intoxilyzer will produce "[a] blood alcohol determination of the defendant." *Id.* at 13. The Intoxilyzer test result in evidence indicates the BAC by percentage. The supreme court has stated that the Intoxilyzer 4011AS was "approved [by the State Director of Health] for use by the county police departments on December 16, 1980." *State v. Christie,* 70 Haw. 158, 163, 766 P.2d 1198, 1201 (1988), *cert. denied,* ___ U.S. ___, 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989) (citing *State v. Tengan,* 67 Haw. 451, 461, 691 P.2d 365, 372 (1984)). The reasonable inference is that the Intoxilyzer measures, by percentage, the BAC of a person in terms of the statutory requirement of *weight. State v. Zaragoza,* 21 Ariz. App. 596, 522 P.2d 552 (1974). In the absence of any contrary evidence, the trial court's ruling was not erroneous. *People v. Krueger,* 99 Ill. App. 2d 431, 241 N.E.2d 707 (1968).

We therefore hold that the trial court properly denied Defendant's motion for judgment of acquittal.

Affirmed.

*Kazuo Oyama* on the briefs for defendant-appellant.

*James M. Anderson,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.