**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **MOONGA OFA**, Defendant–Appellant

NO. 14917

(D.C. COMPLAINT NO. 90231172)

MARCH 25, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE
HUDDY, ASSIGNED BY REASON OF VACANCY

*Per Curiam.* Defendant Moonga Ofa (Defendant) appeals his bench trial conviction of driving under the influence of intoxicating liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a) (1985).[1] Defendant contends that the district court abused its discretion by admitting into evidence the test result obtained from a breath–testing instrument, an intoxilyzer model 4011AS bearing Serial No. 102374 (Intoxilyzer), because the State of Hawai'i (State) failed to lay a proper foundation for its admission. We agree. Accordingly, we reverse the DUI conviction and remand the case with instructions to enter a judgment of acquittal for Defendant.[2]

## I.

On June 17, 1990, Defendant was arrested for DUI. At the police station, Defendant consented to a breath test. The breath test administered on the Intoxilyzer indicated a blood alcohol concentration of 0.12 percent.

At trial, Honolulu Police Department (HPD) criminalist Gilbert Chang (Chang), a certified intoxilyzer operator–supervisor,

---

[1] Hawai'i Revised Statutes (HRS) § 291–4(a) provides as follows:

**Driving under influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:

    (1)   The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

    (2)   The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] Defendant Moonga Ofa (Defendant) also appealed his conviction of driving on the left side of the roadway in violation of HRS § 291C–46(a) (1985). However, Defendant abandoned this appeal by failing to brief this matter. We therefore affirm that conviction.

testified that (1) certified operator–supervisors periodically test or calibrate the HPD's intoxilyzers for accuracy; (2) the testing is done with two simulator solutions or reference samples of different alcohol concentration as required by "Title 11," which is the State Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration (Rules); (3) testing by a beam attenuator[3] is also conducted; (4) after completion of the testing, the operator–supervisor enters into the record book or log book, which is kept at Chang's desk and is under Chang's control, the date and results of the testing for accuracy.

The court admitted into evidence, over Defendant's objection, a copy of a page of the record book (Log) that Chang brought into court. The Log showed that on May 31, 1990, and June 28, 1990, the Intoxilyzer had been tested for accuracy by a beam attenuator and two simulator solutions of 0.05 percent and 0.30 percent alcohol concentration, respectively. Based on the initials "JW" on the Log, Chang testified that John Wadahara (Wadahara) had tested the Intoxilyzer for accuracy on those dates. Chang stated that the Log indicated that the Intoxilyzer was operating accurately on May 31 and June 28, 1990. Wadahara did not testify in the case.

The court admitted the Intoxilyzer test result into evidence over Defendant's objection. The court found Defendant guilty of DUI, commenting "had there been no [breath] test in this case, I would have been inclined to find [Defendant] not guilty." October 1, 1990 Transcript at 77.

## II.

Section 11–111–2.1(j)(2) of the Rules requires testing for accuracy of all breath testing instruments "not less frequently than

---

[3] *State v. Christie*, 70 Haw. 158, 766 P.2d 1198 (1988), *cert. denied*, 490 U.S. 1067, 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989), describes the beam attenuator and its utilization in verifying the accuracy of the intoxilyzer model 4011AS.

every thirty days[.]" Section 11–111–2.1(k) of the Rules provides as follows:

> (k) The recommended calibration testing method shall use a minimum of two reference samples of known alcohol concentration at a known temperature within the range of one hundredths to thirty hundredths per cent weight per volume or higher known alcohol concentrations that are recommended by the breath testing instrument's manufacturer. The results of the analysis shall agree with the reference sample value within the limits of plus or minus one hundredths per cent weight per volume or such limits set by the director.

In *State v. Souza*, 6 Haw. App. 554, 559, 732 P.2d 253, 257 (1987), we concluded:

> [I]n meeting the foundational prerequisites for the admission of the Intoxilyzer test result there must be a showing of strict compliance with those provisions of the Rules which have a direct bearing on the validity and accuracy of the test result. [Footnote omitted.]

Section 11–111–2.1(k) "has a direct bearing on the accuracy of the Intoxilyzer test result." *State v. Hamasaki*, 7 Haw. App. 542, 544, 783 P.2d 1235, 1238 (1989). Thus, a showing of strict compliance with that section is a foundational prerequisite in order to admit a breath test result into evidence.

Defendant contends that the foundational prerequisite was not met because (1) the Log itself and Chang's testimony regarding Wadahara's testing of the Intoxilyzer constituted hearsay and were improperly admitted into evidence and (2) the admission of such evidence violated Defendant's constitutional rights of confrontation. We disagree. Defendant further contends that the record lacks evidence of "known temperature" of the two reference samples of known alcohol concentration, as required by section 11–111–2.1(k). We agree.

## A.

The information on the Log was clearly hearsay. However, the court admitted it under the public records and reports exception to the hearsay rule set forth in Hawai'i Rules of Evidence (HRE) Rule 803(b)(8)(B) which provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, . . . unless the sources of information or other circumstances indicate lack of trustworthiness.

HRE Rule 803 exceptions to the hearsay rule "do not depend upon the present status or whereabouts of the declarant." Rule 803 Commentary.

The Log falls within the HRE Rule 803(b)(8)(B) exception. It constitutes a record or report of a public agency, the HPD. It includes matters observed and reported by a HPD operator–supervisor who tested the Intoxilyzer for accuracy as required by provisions of the Rules. The only issue is whether the Log is excludable from the public records and reports exception to the hearsay rule as "matters observed by . . . law enforcement personnel" in a criminal case.

Federal Rules of Evidence (Fed. R. Evid.) 803(8)(B) is identical to HRE Rule 803(b)(8)(B). In construing the exclusion provision of Fed. R. Evid. 803(8)(B), the Court of Appeals of the Second Circuit took a very restrictive view, holding that

> in criminal cases reports of public agencies setting forth matters observed by police officers and other law enforcement personnel and reports of public agencies setting forth factual findings resulting from investigations

> made pursuant to authority granted by law cannot satisfy
> the standards of any hearsay exceptions if those reports
> are sought to be introduced against the accused.

*United States v. Oates*, 560 F.2d 45, 84 (2d Cir. 1977). The *Oates* restrictive view has been criticized. *See* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(8)[04] (1991).

The Court of Appeals of the Ninth Circuit concluded that "the exclusionary provisions of Rule 803(8)(B) were intended to apply to observations made by law enforcement officials at the scene of a crime or the apprehension of the accused and not 'records of routine, nonadversarial matters' made in a nonadversarial setting." *United States v. Wilmer*, 799 F.2d 495, 500–01 (9th Cir. 1986), *cert. denied*, 481 U.S. 1004, 107 S. Ct. 1626, 95 L. Ed. 2d 200 (1987) (quoting *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir.), *cert. denied*, 442 U.S. 920, 99 S. Ct. 2845, 61 L. Ed. 2d 288 (1979)). *Wilmer* held that, in a DUI case, the calibration report of a breathalyzer maintenance operator is admissible under Fed. R. Evid. 803(8)(B). *See United States v. DeWater*, 846 F.2d 528 (9th Cir. 1988) (in a DUI case, the intoxilyzer test results were admissible under the public records and reports exception to the hearsay rule).

We opt to follow the rationale in the *Orozco*, *Wilmer*, and *DeWater* cases. Clearly, Wadahara's report in the Log of his testing of the Intoxilyzer for accuracy on the specified dates constituted a record of routine, nonadversarial matters made in a nonadversarial setting. *See State v. Smith*, 66 Or. App. 703, 707, 675 P.2d 510, 512 (1984) (certificates of breathalyzer inspections relate to "the routine function of testing breathalyzer equipment to insure that it gives accurate readings").

Moreover, based on the record, we conclude that neither the sources of information nor other circumstances indicate lack of trustworthiness of the information reported in the Log. As indicated above, the testing or calibration of the Intoxilyzer by

Wadahara was routine and nonadversarial. Wadahara had no personal stake in the outcome of individual cases. His duty was to test the Intoxilyzer for accuracy and report the results in the Log. *See DeWater*, 846 F.2d at 530.

As the custodian of the Log and a certified intoxilyzer operator–supervisor, Chang explained what appeared on the Log and what the written items meant. Such testimony did not constitute hearsay. Based on the Log and other exhibits in evidence, Chang gave his opinion testimony regarding the accuracy of the Intoxilyzer. Such opinion testimony was allowable under HRE Rule 702.

Accordingly, the district court did not abuse its discretion in admitting the Log into evidence and denying Defendant's objections to Chang's testimony.

## B.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), the Supreme Court indicated that the Confrontation Clause restricts the range of admissible hearsay by requiring the prosecution to either produce, or show the unavailability of, the declarant whose statement is sought to be used against the defendant or demonstrate the trustworthiness of the hearsay sought to be admitted. Relying on *Roberts*, Defendant asserts that the district court's admission of the Log violated his rights of confrontation guaranteed by the United States and Hawai'i Constitutions.[4] We disagree.

---

[4] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" This right is applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

Art. I, § 14 of the Hawai'i Constitution provides in part:

In a very recent case, the Supreme Court reiterated its statement in *United States v. Inadi*, 475 U.S. 387, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986), that

> *Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out–of–court statements were made in the course of a prior judicial proceeding.

*White v. Illinois*, ____ U.S. ____, ____, 112 S. Ct. 736, 741, 116 L. Ed. 2d 848, 858 (1992). The Supreme Court stressed that it "refused to extend the unavailability requirement established in *Roberts* to all out–of–court statements." ____ U.S. at ____, 112 S. Ct. at 741–42, 116 L. Ed. 2d at 858. Furthermore, the Supreme Court concluded that "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." ____ U.S. at ____, 112 S. Ct. at 743, 116 L. Ed. 2d at 858.

The public records and reports exception to the hearsay rule is firmly rooted in our jurisprudence. HRE Rule 803 Commentary states:

> Traditional common law doctrine has consistently recognized the admissibility of public records under a hearsay exception, predicated on the same general indicia of reliability and trustworthiness as for business records[.]

*See DeWater*, 846 F.2d at 530 (the exception is "firmly enough rooted in our jurisprudence" that an independent inquiry into the reliability of the records and reports is unnecessary); *State v. Conway*, 70 Or. App. 721, 723, 690 P.2d 1128, 1129 (1984) (the public

---

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]

records exception to the hearsay rule has a firm basis in common law).

We therefore conclude that there has been no violation of Defendant's constitutional rights of confrontation.

### C.

In *Hamasaki*, we held that there must be a showing of strict compliance with the provisions of section 11–111–2.1(k) of the Rules in laying a foundation for the admission of an intoxilyzer test result into evidence. Defendant argues that the State failed to show the "known temperature" of the simulator solutions used to test the Intoxilyzer on May 31 and June 28, 1990. Defendant therefore asserts that the district court erred in admitting the Intoxilyzer test result into evidence. We agree.

The Log established that on the two dates in question Wadahara tested the Intoxilyzer for accuracy with simulator solutions of 0.05 percent and 0.30 percent alcohol concentration and the Intoxilyzer registered results within 0.01 percent as required by section 11–111–2.1(k). However, the Log did not indicate the temperature of the simulator solutions. Chang admitted that he had no personal knowledge of Wadahara's testing of the Intoxilyzer on the dates in question other than what was shown on the Log.

The State argues, however, that section 11–111–2.1(k) merely refers to "concentration at a known temperature" and the temperature of the simulator solutions Wadahara used "surely was 'known.'" The State further argues that section 11–111–6(a)(2) of the Rules requires only the name of the calibration operator, "[r]eference control lot number and results," and dates of the calibration to be included in the record book, not the "known temperature" of the reference sample or simulator solution. These arguments are frivolous.

Section 11–111–2.1(k) refers to "known temperature . . . recommended by the breath testing instrument's manufacturer." In other words, a section 11–111–2.1(k) testing must be done with

a simulator solution of a certain temperature recommended by the intoxilyzer's manufacturer. Also, the fact that section 11–111–6(a)(2) does not include the "known temperature" of the simulator solution to be included in the record book does not abrogate any of the requirements in section 11–111–2.1(k). Section 11–111–6(a)(2) merely specifies the minimum information to be included in the record book. Nothing precludes the insertion of the "known temperature" of the simulator solutions or reference samples by the operator–supervisor conducting the testing in the record book.

We conclude that the foundation laid for the admission of the Intoxilyzer test result into evidence was insufficient. Therefore, the court abused its discretion in admitting the Intoxilyzer test result into evidence.

## III.

The district court's admission of the Intoxilyzer test result into evidence compels a vacation of the DUI conviction. The question is whether we should remand the case for retrial or with instructions to enter a judgment of acquittal for Defendant.

In *State v. Bannister*, 60 Haw. 658, 660, 594 P.2d 133, 134 (1979), a case involving a first degree theft conviction in a jury–waived trial, the supreme court stated:

> Where a judgment is reversed for insufficiency of the evidence, as opposed to reversal for trial error, the Double Jeopardy Clause of the Fifth Amendment prevents a new trial.

In *Bannister*, the supreme court concluded that the store manager's inadmissible hearsay evidence was the sole evidence with respect to a necessary element of the charged offense. The court deemed that its reversal of the conviction was for insufficiency of the evidence rather than for trial error. Consequently, it remanded

the case with instructions to the trial court to enter a judgment of acquittal for the defendant.

In *State v. Arakaki*, 7 Haw. App. 48, 744 P.2d 783 (1987), *overruled on other grounds*, by *State v. Dow*, 72 Haw. 56, 61, 806 P.2d 402, 405 (1991), the prosecution conceded on appeal that because of insufficient foundation the intoxilyzer test result had been improperly admitted into evidence. Relying on *Bannister*, the defendant argued that a retrial would subject him to double jeopardy. We distinguished *Bannister* by stating:

> The hearsay evidence in *Bannister* was held to be inadmissible under well–settled principles of evidence law. [Citation omitted.] Neither of the DUI cases which required strict compliance with Chapter 111 of Title 11 of the Hawai‘i Administrative Rules with reference to the testing of the accuracy of the intoxilyzer, *State v. Rolison*, 6 Haw. App. [569], 733 P.2d 326 (1987); *State v. Souza*, 6 Haw. App. [554], 732 P.2d 253 (1987), had been decided at the time of the trial of this case. Thus, unlike the disputed evidence in *Bannister*, the evidence at issue in this case was admitted, but not contrary to well–settled principles of evidence law. We therefore apply the rule that "evidentiary points that involve matters of first impression" in this state constitute "trial error and not any insufficiency of the evidence at trial." *State v. Van Isler*, 283 S.E.2d 836, 838 (W. Va. 1981). *See also People v. Shirley*, 31 Cal. 3d 18, 723 P.2d 1354, 181 Cal. Rptr. 243 (1982).

*Arakaki*, 7 Haw. App. at 58, 744 P.2d at 789.

Our rationale in *Arakaki* is not applicable in the case at bar. Here, the case was tried in October 1990, well after we decided *Hamasaki* on December 1, 1989. *Hamasaki* clearly indicated that a strict compliance with section 11–111–2.1(k) of the Rules required a showing at trial that "*the two reference samples* used for

calibration testing of the Intoxilyzer *be at a known temperature*." 7 Haw. App. at 545, 783 P.2d at 1238 (emphasis in original). Thus, the evidentiary matter at issue in this case was not an evidentiary point of first impression.

Accordingly, our reversal of the DUI conviction based on the improperly admitted Intoxilyzer test result is for insufficiency of the evidence, not for trial error. Therefore, the State may not retry the DUI charge.

## IV.

We conclude that the district court (1) did not abuse its discretion in admitting the Log and Chang's testimony into evidence and (2) did not violate Defendant's constitutional rights of confrontation by its evidentiary rulings. The court, however, abused its discretion in admitting the Intoxilyzer test result into evidence because the foundation laid for its admission was insufficient. The resulting reversal is for insufficiency of the evidence.

Accordingly, we reverse the DUI conviction and remand the case with instructions for an entry of judgment of acquittal for Defendant. However, we affirm the driving on the left side of the roadway judgment of conviction.

*Winston D.M. Ling*, Deputy Public Defender, on the brief for defendant–appellant.

*Patricia A. Loo*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.