*266 DISSENTING OPINION BY
RECKTENWALD, C.J.,
IN WHICH NAKAYAMA, J., JOINS
I respectfully dissent. The Majority holding will impose an additional evidentiary burden on the State in drunk driving cases— a burden which is not required under the Hawaii Rules of Evidence (HRE). I would hold instead that the Intoxilyzer supervisor’s inspection record is admissible as a public record pursuant to HRE Rule 803(b)(8)(B), consistent with other federal[1] and state[2] jurisdictions to consider this issue. In so concluding, I fully agree with the Intermediate Court of Appeals’ (ICA) reasoning in State v. Ofa. 9 Haw.App. 130, 828 P.2d 813 (1992), which has sanctioned the admissibility of such records for the past 24 years.
In Ofa, the ICA addressed the admissibility of a Honolulu Police Department (HPD) certified Intoxilyzer operator-supervisor’s log, which included the records of Intoxilyzer accuracy test results. The District Court admitted the log into evidence after a HPD criminalist testified about how such tests were conducted and the results recorded in the log. The ICA held that the log falls within the HRE Rule 803(b)(8)(B) hearsay exception. Id. at 135, 828 P.2d at 816. HRE Rule 803(b)(8)(B) (2002) provides:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, ... unless the sources of information or other circumstances indicate lack of trustworthiness.
The ICA noted that the log “constitutes a record or report of a public agency, the HPD” and “includes matters observed and reported by an HPD operator-supervisor who tested the Intoxilyzer for accuracy as required by provisions of the [State Department of Health’s Rules for the Testing of Blood, Breath and Other Substances for Alcohol Concentration].” Ofa, 9 Haw.App. at 135, 828 P.2d at 816-17.
The ICA then determined that the only issue is whether the log was excluded from HRE Rule 803(b)(8)(B) as “‘matters observed by ... law enforcement personnel’ in a criminal case.” Id. at 135, 828 P.2d at 817. It noted that the Ninth Circuit Court of Appeals had addressed this issue with regard to Federal Rules of Evidence (FRE) Rule 803(8)(B),[3] the federal counterpart of HRE Rule 803(b)(8)(B):
*267 [PRE Rule] 803(8)(B) is identical to HRE Rule 803(b)(8)(B). In construing the exclusion provision of [PRE Rule] 803(8)(B), the Court of Appeals of the Second Circuit took a very restrictive view, holding that
in criminal cases reports of public agencies setting forth matters observed by police officers and other law enforcement personnel and reports of public agencies setting forth factual findings resulting from investigations made pursuant to authority granted by law cannot satisfy the standards of any hearsay exceptions if those reports are sought to be introduced against the accused.
United States v. Oates, 560 F.2d 45, 84 (2d Cir. 1977). The Oates restrictive view has been criticized. See 4 J. Weinstein & M. Berger, Weinstein’s Evidence § 803(8)[04] (1991).
The Court of Appeals of the Ninth Circuit concluded that “the exclusionary provisions of Rule 803(8)(B) were intended to apply to observations made by law enforcement officials at the scene of a crime or the apprehension of the accused and not ‘records of routine, nonadversarial matters’ made in a nonadversarial setting.” United States v. Wilmer, 799 F.2d 495, 500-01 (9th Cir. 1986) (quoting United States v. Orozco, 590 F.2d 789, 793 (9th Cir.), cert. denied, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979)). Wilmer held that, in a DUI case, the calibration report of a breathalyzer maintenance operator is admissible under [PRE Rule] 803(8)(B). See United States v. DeWater, 846 F.2d 528 (9th Cir. 1988) (in a DUI case, the intoxilyzer test results were admissible under the public records and reports exception to the hearsay rule).
Id.
The ICA then adopted the rationale of the Ninth Circuit cases. It stated, “[c]learly, [the operator-supervisor’s] report in the Log of his testing of the Intoxilyzer for accuracy on the specified dates constituted a record of routine, nonadversarial matters made in a nonadversarial setting.” Id.; see also State v. Smith, 66 Or.App. 703, 675 P.2d 510, 512 (1984) (stating that certificates of breathalyzer inspections relate to “the routine function of testing breathalyzer equipment to insure that it gives accurate readings”). It further determined that there were no circumstances that indicated a lack of trustworthiness of the information reported in the log because (1) the testing was routine and nonadversarial, (2) the inspecting officer had “no personal stake in the outcome of individual cases[,]” and (3) it was the officer’s duty to test the Intoxilyzer and record the results in the log. Ofa, 9 Haw.App. at 136-37, 828 P.2d at 817. Thus, the ICA held that the log was admissible under the HRE Rule 803(b)(8)(B) hearsay exception. Id.
The holding and reasoning of Ofa are directly applicable to this case. Like the log in Ofa, the Intoxilyzer supervisor’s inspection record is a record of routine, nonadversarial matters made in a nonadversarial setting. Further, there is nothing to indicate a lack of trustworthiness in the record because the Intoxilyzer supervisor tested the instrument pursuant to his duties and without any personal interest in the results. Thus, I would hold that the record is admissible as a public record pursuant to HRE Rule 803(b)(8)(B).
Moreover, contrary to the Majority’s holding, a record of the direct observations of the Intoxilyzer supervisor is plainly a “matter observed pursuant to duty imposed by law as to which matters there was a duty to report” under HRE Rule 803(b)(8)(B). The record simply identifies that the Intoxilyzer was operating accurately in compliance with Hawai'i Administrative Rules Chapter 114-7 on the date that the supervisor conducted the accuracy test. It does not contain subjective and evaluative information, such as information regarding the supervisor’s activities on that day or the methods used to record the target values. The HRE Rule 803(b)(8)(B) public record exception is directed at exactly this type of document—one that is reliable and trustworthy and is created pursuant to a public official’s regular duties. See Commentary for HRE Rule 803 (stating that the justification for HRE Rule 803(b) is “the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record”) (quoting the Advisory Committee’s Note to PRE 803(b)).
*268 As noted above, the Majority reaches a conclusion contrary to other federal and state jurisdictions to consider the applicability of the public records exception to breathalyzer inspection records. The Majority contends that these courts failed to “explicitly eonsider[ ]” the question of whether the content of such records qualifies as “matters observed.” Majority Opinion at 264-265, 400 P.3d at 465-66 n.27. However, other jurisdictions have considered the question implicitly, and found the answer to be “yes.” See, e.g., Dilliner, 212 W.Va. at 141, 569 S.E.2d at 217 (“The accuracy inspection report of an intoxi-lyzer sets forth matters observed pursuant to a duty imposed by the Code of State Rules which also requires that these matters be reported.”) (emphasis added). Similarly, the Majority asserts that Ofa “does not speak to the issue in this appeal” because it does not expressly consider whether the contents of an Intoxilyzer log constitute “matters observed.” Majority Opinion at 261, 400 P.3d at 462. However, Ofa addresses the question implicitly:
The Log falls within the HRE Rule 803(b)(8)(B) exception.... It includes matters observed and reported by a HPD operator-supervisor who tested the Intoxi-lyzer for accuracy as required by provisions of the Rules.
9 Haw.App. at 135, 828 P.2d at 816-17 (emphasis added).
The Majority relies instead on Baker v. Elcona Homes Corp., 588 F.2d 551 (6th Cir. 1978), which examined whether the public records hearsay exception of the Federal Rules of Evidence applied to a police report. In Baker, a police officer arrived at the scene after a traffic accident, where he interviewed witnesses and wrote down his conclusions regarding which driver was at fault and the color of the traffic light when the vehicles collided. Id. at 554-55. The Sixth Circuit determined that this section of the report comprised “factual findings” rather than “matters observed,” noting,
It is also clear from the construction of the rule itself that factual findings admissible under [FRE] Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence, as contrasted to those facts which are “matters observed pursuant to duty imposed by law as to which matters there was a duty to report” called for under Rule 803(8)(B).
Id. at 556-58.
The Majority cites Baker to argue that the Intoxilyzer supervisor’s conclusion that the machine was functioning correctly should be considered a “factual finding,” but the Sixth Circuit’s analysis is inapposite to the present case. A routine determination that a piece of equipment works properly cannot be reasonably characterized as an “interpretative conclusion” akin to findings about the circumstances of a traffic accident reached after weighing evidence from conflicting sources. Majority Opinion at 260, 400 P.3d at 461. In keeping with Ofa and similar cases from other jurisdictions, it is my view that breathalyzer calibration reports fall squarely within the category of “matters observed.”
I respectfully disagree with the Majority’s contention that other jurisdictions have used “a combination of testimony and written data to lay the foundation” for what it calls “evaluative opinions and reports.” Majority Opinion at 264, 400 P.3d at 465 n.26. As noted above, courts in other jurisdictions routinely admit Intoxilyzer calibration records under the hearsay exception for public records or business records. These records are then used to lay the foundation for other evidence, such as a defendant’s breath test results. See, e.g., People v. Black, 40 Ill.Dec. 322, 406 N.E.2d at 24-25; State v. Jensen, 351 N.W.2d at 32-33. By conflating these two things—Intoxi-lyzer records admitted under a hearsay exception, and other evidence supported by those records—the Majority creates a barrier to the admissibility of those records that is not required by the HRE.
The result is that no document or record that requires any sort of training or specialized knowledge to prepare will be admissible under HRE Rule 803(b)(8). This could preclude not only calibration reports of technicians, but also, for instance, a criminologist’s notations on a fingerprint card. See United States v. Gilbert, 774 F.2d 962, 966 (9th Cir. 1985) (holding that a fingerprint card is admissible under FRE 803(8)(B)). These records are the types of “routine, nonadversarial *269 matters” that are not intended to be excluded by the public records exception. See Orozco, 590 F.2d at 793-94 (explaining that the legislative history of FRE Rule 803(8) indicates that “Congress did not intend to exclude records of routine, nonadversarial matters”).
The Majority’s opinion will have a significant impact on future OVUII prosecutions. Going forward, the Majority’s holding would require the State to bring, to every OVUII trial, the certified breath test operator who conducted the accuracy inspection of the In-toxflzyer, or another witness who could provide similar testimony. While that burden should not dictate our application of the HRE, it nevertheless highlights the serious implications of the result reached by the Majority—a result which, respectfully, is not required by our rules of evidence.
For these reasons, I dissent.

. See State v. Dilliner, 212 W.Va. 135, 569 S.E.2d 211, 218 (2002) (holding that an accuracy inspection report of an intoxilyzer is admissible under public records hearsay exception); Steiner v. State, 706 So.2d 1308, 1313 (Ala. Crim. App. 1997); State v. Smith, 66 Or.App. 703, 675 P.2d 510, 512 (1984); State v. Ward, 15 Ohio St.3d 355, 474 N.E.2d 300, 302 (1984); State v. Huggins, 659 P.2d 613, 615 (Alaska Ct. App. 1982); State v. Ruiz, 120 N.M. 534, 903 P.2d 845, 847 (N.M. Ct. App. 1995), abrogated by State v. Martinez, 141 N.M. 713, 160 P.3d 894, 900 (2007); Derrick v. State ex rel. Dep't of Public Safety, 164 P.3d 250, 254 (Okla. Civ. App. 2007); Best v. State, 328 A.2d 141, 143 (Del. 1974); Douglas v. State, 145 Ga.App. 42, 243 S.E.2d 298, 299 (1978); People v. Black, 84 Ill.App.3d 1050, 40 Ill.Dec. 322, 406 N.E.2d 23, 25 (1980); State v. Jensen, 351 N.W.2d 29, 32 (Minn. App. 1984); Commonwealth v. Sweet, 232 Pa.Super. 372, 335 A.2d 420, 423 n.5 (1975); Frost v. North Dakota Dep't of Transp., 487 N.W.2d 6, 11 (N.D. 1992); see also Bohsancurt v. Eisenberg, 212 Ariz. 182, 129 P.3d 471, 476-477 (Ariz. Ct. App. 2006) (holding that calibration records qualify under the business records hearsay exception); Harkins v. State, 735 So.2d 317, 319 (Miss. 1999).

.FRE Rule 803(8) (2014) provides the following hearsay exception:
Public Records, A record or statement of a public office if:
(A) it sets out:
(i) the office's activities;
(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.