Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000720
28-MAY-2021
11:34 AM
Dkt. 53 SO

NO. CAAP-19-0000720

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
DANIEL J. DUMFORD, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(KONA DIVISION)
(CASE NO. 3DTA-18-02919)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)

Defendant-Appellant Daniel Dumford (**Dumford**) appeals from the Judgment and Notice of Entry of Judgment, entered September 20, 2019 (**Judgment**) in favor of Plaintiff-Appellee State of Hawaiʻi (**State**), in the District Court of the Third Circuit, Kona Division (**District Court**).[1]  The District Court convicted Dumford of operating a vehicle under the influence of an intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(3) (Supp. 2019).[2]

---

[1]     The Honorable Margaret K. Masunaga presided.

[2]     HRS § 291E-61(a)(3) provides:

> **§ 291E-61  Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of

(continued...)

Dumford raises two points of error on appeal, contending that: (1) the District Court erred in admitting Dumford's Intoxilyzer 8000 (**Intoxilyzer**) breath test results (**Breath Test**) without proper foundation; and (2) the State's failure to comply with Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 16 deprived Dumford of his constitutional rights to due process, equal protection, and effective assistance of counsel.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Dumford's points of error as follows:

Dumford first argues that the State failed to lay a proper foundation to introduce the Breath Test because it failed to establish that the Intoxilyzer was in proper working order.

The foundational requirements to admit a Breath Test in an OVUII case are provided in State v. Davis, 140 Hawaiʻi 252, 256, 400 P.3d 453, 457 (2017), as follows:

> [T]o admit a specific Intoxilyzer breath alcohol test result into evidence, the prosecution must lay a proper foundation "to establish the accuracy of the alcohol concentrations used in breath tests." [State v. Thompson, 72 Haw. 262, 263, 814 P.2d 393, 394 (1991).] The foundation must show that "(1) the intoxilyzer was in proper working order; (2) its operator was qualified; and (3) the test was properly administered." Id. at 263, 814 P.2d at 394-95 (quoting State v. Souza, 6 Haw. App. 554, 558, 732 P.2d 253, 257 (1987)). This foundation is necessary to prove the reliability of the test result that establishes intoxication

---

2/ (...continued)
operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

. . . .

(3)     With .08 or more grams of alcohol per two hundred ten liters of breath[.]

> before the test result can be relied on as a substantive fact. Souza, 6 Haw. App. at 558, 732 P.2d at 256.
>
> "[I]n meeting the foundational prerequisites for the admission of the Intoxilyzer test result[,] there must be a showing of strict compliance with those provisions of the [Hawaiʻi Administrative Rules governing the testing of blood, breath, and other bodily substances for alcohol concentration (**HAR**)] which have a direct bearing on the validity and accuracy of the test result." State v. Kemper, 80 Hawaiʻi 102, 105, 905 P.2d 77, 80 (App. 1995) (quoting State v. Matsuda, 9 Haw. App. 291, 293, 836 P.2d 506, 508 (1992)). This includes establishing that the calibration procedure used to test the accuracy of the Intoxilyzer strictly complied with the HAR because the calibration test has a "direct bearing on the validity and accuracy of the test result obtained from that Intoxilyzer." Souza, 6 Haw. App. at 562, 732 P.2d at 259. Accordingly, in order "to fulfill the foundational prerequisites of admissibility" of the test result in this case, the State was required to show that the Intoxilyzer calibration test, which has a direct bearing on the validity and accuracy of Davis's breath test result, was in compliance with HAR § 11-114-7 and was therefore in proper working order on the calibration testing dates. See id.

(Emphasis added; some brackets in original and footnote omitted).

Accordingly, there are two tests at issue in an HRS § 291E-61(a)(3) case: (1) a Breath Test, which measures a subject's blood alcohol content (**BAC**) using the Intoxilyzer, and (2) a calibration and diagnostic test (**Accuracy Test**), also referred to as a "calibration test," which ensures the Intoxilyzer is in proper working order when the Breath Test is administered.

The requirements for the Accuracy Test are described in HAR § 11-114-7, as follows:

> (a) Every accuracy test procedure shall be approved by the DUI coordinator in writing and shall include, but not be limited to the following requirements:
>
> (1) The test shall be conducted by a supervisor;
>
> (2) At least two different reference samples and an air blank shall be run with each accuracy test;
>
> (3) Reference samples shall be chosen so that their target values are not less than 0.04 gm alcohol/210 liters and not greater than 0.25 gm alcohol/210 liters;

3

(4)     Reference sample target values shall differ from each other by at least 0.04 gm alcohol/210 liters;

(5)     Reference sample test results which vary from the target value by more than plus or minus 0.0l gm alcohol/210 liters or plus or minus ten percent, whichever is greater, shall be cause for the breath alcohol testing instrument used to be removed from service until the fault has been corrected; and

(6)     An accuracy test shall be performed on an operating instrument at intervals not to exceed thirty-one days.

The State's first witness, Officer Kimo Keliʻipaʻakaua (**Officer Keliʻipaʻakaua**), testified that:  he is a "supervisor for the Intoxilyzer 8000," which is a device that measures the BAC for a subject and is "approved for use by the State Department of Health;" his job is to "calibrate and run diagnostics" on the Intoxilyzer; and he is licensed as an Intoxilyzer supervisor by "the DUI coordinator of the Department of Health."  Officer Keliʻipaʻakaua testified that he recognized the State's proposed Exhibit 1 (**Calibration Statement**) as his sworn statement that he conducted an Accuracy Test on the Intoxilyzer located at the Kona Police Station on September 29, 2018, at 1:34 a.m.  Dumford argues that the District Court erred in admitting the Calibration Statement into evidence because it is "incomplete" because it is missing the data from the Accuracy Test that is necessary to establish strict compliance with HAR § 11-114-7, which is required to show that the Intoxilyzer was in proper working order, and it is inadmissible hearsay.

In Davis, the prosecution attempted to satisfy the foundational element that the Intoxilyzer was in proper working order by introducing the sworn statements of an Intoxilyzer supervisor, which included the data results of the most recent Accuracy Test, and stated that "[t]he Intoxilyzer was operating

4

accurately in compliance with [HAR § 11-114-7] on the date indicated below, when I conducted the accuracy test recorded on this document."  Davis, 140 Hawaiʻi at 254, 400 P.3d at 455.  The prosecution sought to introduce the documents under the public records hearsay exception in Hawaiʻi Rules of Evidence (**HRE**) Rule 803(b)(8), which excludes the following from hearsay:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel[.]

Id. at 257, 400 P.3d at 458 (quoting HRE Rule 803(b)(8)).

The supreme court held that, while the data reported from the Accuracy Test could be introduced as a "matter[] observed" under HRE Rule 803(b)(8)(B), the conclusion that the Intoxilyzer "was operating accurately" was not itself a matter observed, in that it was not a "direct observation," a "routine recordation," or "recorded data" reflecting observations that are concrete and simple; rather, it was an evaluative finding or opinion.  Id. at 260-61, 400 P.3d at 461-62.  The supreme court noted, however, that:

> In order to render evaluative opinions or conclusions based on "matters observed," other evidence may be introduced in conjunction with data properly admitted under HRE Rule 803(b)(8)(B).  This additional evidence may come in a variety of forms, and our decision in this case will not require the State in every OVUII prosecution to bring to the trial the Intoxilyzer supervisor who conducted the machine's most recent calibration testing.

Id. at 264–65, 400 P.3d at 465–66 (footnote omitted).

Regarding the requirement of a showing of strict compliance with HAR § 11-114-7, in State v. Ofa, 9 Haw. App. 130, 139, 828 P.2d 813, 818 (1992), this court reviewed a challenge to

5

the introduction of Breath Test results into evidence on the basis that there was no showing that the Accuracy Test was performed in strict compliance with the then-applicable administrative rules governing BAC testing. Specifically, the applicable rules required, *inter alia*, that the Accuracy Test utilize "two reference samples of known alcohol concentration at a known temperature." Id. at 134, 828 P.2d at 816. The defendant appealed arguing that the prosecution failed to show the "known temperature" of the simulator solutions used. Id. at 139, 828 P.2d at 818. This court agreed and reversed the conviction because, without evidence of the known temperature of the reference samples, the prosecution failed to make a "showing of strict compliance" with the applicable rule, thus no foundation was laid to introduce the Breath Test results. Id. at 140, 828 P.2d at 818-19; see also Davis, 140 Hawaiʻi at 256, 400 P.3d at 457.

Here, the State introduced no data report(s) from the Accuracy Test detailing any of the steps taken, readings, or results, but only introduced the Calibration Statement, which contains a copy of Officer Keliʻipaʻakaua's Intoxilyzer supervisor license and states that Officer Keliʻipaʻakaua conducted an Accuracy Test on September 29, 2018, and that the Intoxilyzer "was properly maintained and in proper working order when [he] conducted the accuracy test." Officer Keliʻipaʻakaua did not testify that he had a present recollection of conducting the September 29, 2018 Accuracy Test and testified that he did not know, for example, the target values of the test cannisters he

used.  Instead, he testified more generally as to what his process is for running an Accuracy Test.  In addition, Officer Keliʻipaʻakaua did not testify that the Calibration Statement was a police record under which he had a duty to report by law.

We conclude that the State failed to lay a foundation for a hearsay exception under HRE Rule 803(b)(8)(B) to introduce the Calibration Statement, and even if a foundation was laid, under Davis, the statement that the Intoxilyzer was "in proper working order" is an evaluative opinion rather than a matter observed, and thus, would not fall under the HRE Rule 803(b)(8)(B) exception.  Thus, the District Court erred in admitting the Calibration Statement into evidence.  We further conclude that the Calibration Statement is incomplete in that it contains no data report(s) from the Accuracy Test showing any of the steps taken.  Therefore, even if it were admissible, it contains no information that could make a showing of strict compliance with HAR § 11-114-7.

The State argues that Officer Keliʻipaʻakaua's testimony sufficiently shows he conducted the Accuracy Test in strict compliance with HAR § 11-114-7.  However, Dumford contends no such showing was made, as Officer Keliʻipaʻakaua admitted that he did not remember the "exact details" of conducting the Accuracy Test and did "not remember the specific reading for each of the test canisters" he used.

Davis and Ofa require a showing of strict compliance with HAR § 11-114-7 as to the testing procedure used.  Davis, 140 Hawaiʻi at 256, 400 P.3d at 457; Ofa, 9 Haw. App. at 139-140, 828

P.2d at 818-19.  HAR § 11-114-7 contains specific parameters for test canister target values used in the Accuracy Test.  See HAR § 11-114-7(a)(3) ("Reference samples shall be chosen so that their target values are not less than 0.04gm alcohol/210 liters and not greater than 0.25gm alcohol/210 liters[.]").  Without the data reports from the Calibration Test, testimony from present memory of the test canister readings, or some other evidence showing the target values of the test canisters actually used, the State failed to provide a basis for the District Court to find a "showing of strict compliance" with HAR § 11-114-7.  Davis, 140 Hawaiʻi at 256, 400 P.3d at 457.

Absent a showing of strict compliance with HAR § 11-114-7, the District Court erred in finding that the State met the foundational requirement of showing that the Intoxilyzer was in proper working order.  Without a proper foundation, Dumford's Breath Test results were inadmissible.  Absent the Breath Test results, there is no other basis in the record to determine Dumford's BAC, and thus, we conclude that there is no evidence of an essential element of HRS § 291E-61(a)(3).  For these reasons, we reverse Dumford's conviction.  See State v. Nakamitsu, 140 Hawaiʻi 157, 164, 398 P.3d 746, 753 (2017) (affirming this court's reversal of the defendant's conviction for OVUII under HRS § 291E-61(a)(3) because, without admissible BAC evidence, there was insufficient evidence to support the conviction); Ofa, 9 Haw. App. at 141, 828 P.2d at 819-20 (reversing conviction on basis of insufficiency of evidence at trial).

In light of this conclusion, we need not reach Dumford's other arguments.

For the reasons set forth above, the District Court's September 20, 2019 Judgment is reversed.

DATED: Honolulu, Hawaiʻi, May 28, 2021.

On the briefs:

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge