Appellant was convicted in Birmingham Municipal Court for Driving a Vehicle While Intoxicated, in violation of Section 34-56 of the General Code of the City of Birmingham, Alabama, 1964, as amended. Subsequently, in a trial de novo in Jefferson Circuit Court, appellant was convicted by a jury of said offense and fined three hundred dollars. The trial court, adjudging appellant guilty in accordance with the verdict, sentenced appellant to pay the jury imposed fine and an additional punishment of ten days at hard labor.
A statement of the facts is set out below, appellant having preserved the sufficiency of the evidence for review on a motion for new trial, which was denied.
Norman A. Stapp testified that he was a policeman for the City of Birmingham. In eight years of experience on the force, Stapp had occasion to see persons in various stages of intoxication and drunkenness. On September 10, 1977, at approximately 8:45 a.m., Stapp, in his blue and white police vehicle, received a radio message. Immediately thereafter, Stapp observed appellant driving a blue Volkswagen Rabbit, approaching Stapp from behind. Appellant then passed Stapp and was clocked by Stapp for six blocks at a speed of sixty miles in a posted forty mile per hour speed zone. Stapp further testified that appellant's vehicle was weaving as it passed him. After clocking appellant's speed, Stapp turned on his siren and blue light and appellant pulled over and stopped.
Appellant got out of his car and presented his driver's license to Stapp. Stapp testified that appellant "had a strong odor of an intoxicant on his breath," that his walk was unsteady, and that his speech was slurred. In Stapp's opinion, appellant was intoxicated and Stapp placed him under arrest for driving while intoxicated.
Approximately an hour after arresting appellant a wrecker towed appellant's car in. During this period of time, appellant had nothing to eat, drink, or smoke. Because appellant had told him that he had been beaten up, Stapp took appellant to Cooper Green Hospital for treatment. However, Stapp noticed no injuries on appellant's person. At the hospital, appellant refused treatment and signed a "release form." Stapp then took appellant to Birmingham City Jail. After a test conducted on appellant in his presence, Stapp returned to his regular duties.
The City then introduced into evidence, without objection, the rules and regulations of the Alabama State Board of Health pertaining to the Alabama Chemical Intoximeter Test. The trial court also took judicial notice of Section 34-56, General Code of Birmingham, 1964, as amended, which designates this procedure as the test to be given in intoxication charges.
Howard Calton testified that he was employed by the Birmingham Police Department and that he was the Custodian of Records of Photo-Electric Intoximeter tests, including checks of those machines by members of the State of Alabama Department of Public Safety. Calton further testified that these records reflected that Machine number 174 was checked on August 11, 1977, at 12:20 p.m., by Sergeant L.H. Wikingstad, an Alabama State Trooper. Appellant objected to the admission of this record entry into evidence, on the ground that it contained hearsay, Sergeant Wikingstad being the only person who could testify *Page 338 
to such information. The trial court overruled appellant's objection. Calton further testified that this record was in his care, custody, and control, and that these records were kept in the regular course of business.
Frank E. Williamson testified that he was a police officer for the City of Birmingham, receiving and discharging prisoners at the jail. Additional duties included administering Photo-Electric Intoximeter tests to subjects. Williamson explained that he was trained to operate the intoximeter in Montgomery, Alabama, during a course which lasted a week. Williamson had conducted this test approximately two hundred times.
On September 10, 1977, Williamson ran a "P.E.I." test on appellant using machine number 174. Officer Stapp witnessed the test. Additionally, Williamson did not observe appellant eat, drink, or smoke anything before the test was administered. Appellant objected to the reading of the test results on the ground that the rules and regulations of the State Health Department had not been met. This objection was overruled, and Williamson testified that the alcohol content in appellant's blood was .17 percent. Williamson further testified that he was duly licensed to operate an intoximeter and produced his license from the Alabama State Board of Health in Court. At this time the City introduced a record of appellant's P.E.I. test results without objection. Williamson's testimony concluded the City's case and the City rested.
Appellant testified that, on the evening of September 9, 1977, he went to Bank's Lounge where he had seven or eight drinks of vodka. After appellant left the bar, at approximately 2:30 a.m. the next morning, a lady asked him to walk her home. Shortly thereafter appellant was attacked and hit on the head. Appellant further testified that he awoke at a quarter till nine that morning to find a fireman administering oxygen to him. Appellant jumped up and ran to his car because he was scared. When appellant was pulled over by police, he was en route to a hospital because his head and ribs were hurting.
Appellant further testified that he was asthmatic and that he had taken Primatene Mist for this condition for ten years. At this time appellant introduced a bottle of the medicine in evidence. After appellant was pulled over he took some of the Mist in back of the police car. Appellant kept his medication with him the entire time he was in jail.
On cross-examination, appellant testified that he had not eaten since the night before, prior to going to Bank's Lounge. He said there might have been a stale sandwich in his car left over from work. Appellant did stop on his way to the hospital, before he was arrested, to buy three corn dogs. After the P.E.I. test at the police station, appellant ate the corn dogs.
Appellant told a weird story concerning the events the night he went to Bank's Lounge. He testified that he had six thousand seven hundred dollars in one dollar bills in his socks and three hundred and eighty dollars in his right front pants pocket when he left the lounge. Though he claims he was knocked unconscious by an unknown assailant as he was walking a strange woman to her home, the money was still on his person when he was arrested. The officers took possession of the money when appellant was put in jail and returned it to him when he was released.
In rebuttal the City called J.H. Jones, a police officer for the City of Birmingham. On September 10, 1977, Jones arrived at the scene of appellant's arrest, after appellant had already been pulled over. There Jones observed three corn dogs in the appellant's car. Jones smelled a strong odor of alcohol about appellant's breath and observed appellant staggering. In Jones' opinion, appellant was intoxicated. Jones further testified that appellant ate, drank, and smoked nothing up to the time the P.E.I. test was administered.
Appellant first contends that it was error to introduce the intoximeter log book showing a check of machine number 174 in that it contained hearsay information. Here there was no error since the record was admissible under Section 12-21-43, *Page 339 
Code of Alabama 1975. That Section provides,
 "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, `business' shall include a business, profession, occupation and calling of every kind."
Secondly, appellant urges the court to find that the administration of medicine containing alcohol would rebut the presumption raised by the results of the Photo-Electric Intoximeter test and hold the results of the test inadmissible. There was no error in admitting the results of the P.E.I. test in the case at bar. The evidence shows that a proper predicate for the result was laid and that all prerequisites for admissibility were present. Patton v. City of Decatur, Ala.Cr.App., 337 So.2d 173, reversed, Ala., 337 So.2d 321. Only appellant testified that he used the medication Primatene Mist before the test was conducted, all law enforcement officers testifying that appellant had nothing to eat, drink, or smoke from the time of arrest till after the P.E.I. test was administered. Appellant's testimony that he had taken medication after time of arrest and that he was not intoxicated, which was in conflict with the City's evidence, presented the question of appellant's intoxication vel non to the jury. Dowdyv. State, 39 Ala. App. 178, 96 So.2d 687. Numerous other authorities may be found in Alabama Digest, Automobiles, Section 356.
Finally, appellant contends that the result of the P.E.I. test given him is inadmissible because the City tested the blood alcohol content using a standard of grams per one hundredcubic centimeters. Section 32-5-193 (a)(4), Code of Alabama, 1975, specifies that the amount of alcohol in blood shall be weighed in milligrams per one hundred cubic centimeters.
Appellant contends that the City adopted a less stringent measure of proof of intoxication than has the State. Appellant's argument is specious at best, since the conversion from grams to milligrams requires only the move of a decimal point, which does not change the amount of alcohol in the blood.
A careful search of the record reflects no error injuriously affecting the substantial rights of appellant, and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.