ON APPLICATION FOR REHEARING
The opinion of October 11, 1996, is withdrawn, and the following opinion is substituted therefor.
Paul Jeffrey Gwarjanski was convicted in Montgomery District Court for driving under the influence of alcohol, a violation of § 32-5A-191(a), Ala. Code 1975. He appealed to Montgomery Circuit Court, and a jury found him guilty of driving under the influence. He was sentenced to 60 days in the county jail. The sentence was suspended, and he was placed on unsupervised probation for one year.
 I.
The appellant contends that the trial court erred in denying his motion to suppress and his motion in limine as to evidence seized as a result of a stop of his vehicle. He argues that the state failed to demonstrate probable cause for the state trooper's stop of the appellant's vehicle and that, therefore, the evidence seized as a result of the search of his vehicle was inadmissable. We disagree.
Only "reasonable suspicion," not probable cause, is required to support the traffic stop in this case. This court stated inWatts v. State, 651 So.2d 1105 (Ala.Cr.App. 1994), that "a police officer has the authority to make a forcible stop of a person when the officer has a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." Id. at 1107. Reasonable suspicion for a particular stop is determined by considering the totality of the circumstances, as known to the officer at the time of the stop. State v. Washington, 623 So.2d 392, 395
(Ala.Cr.App. 1993).
Here, the state trooper testified that he observed the appellant for approximately 40 minutes before he stopped the appellant's vehicle. During that time, the state trooper saw the appellant, who was driving in heavy traffic, change lanes without signaling properly, drive too close to cars ahead of him, abruptly brake several times, swerve back and forth between lanes, and veer a couple of feet over the white line on the edge of the road. (R. 128-29.) Based upon these observations, the state trooper, at the first opportunity, stopped the appellant's vehicle. When the state trooper approached the appellant, he smelled alcoholic beverages and he noted that the appellant's eyes were glazed, watery, and bloodshot. (R. 133-34.) The state trooper testified that the appellant was arrested after he failed a field sobriety test. Considering the appellant's reckless driving, the state trooper had a reasonable suspicion sufficient to support this particular traffic stop.
 II.
The appellant contends that the trial court erred in allowing into evidence the results of the Intoxilyzer 5000 ("I-5000") blood-alcohol test indicating that his blood-alcohol concentration was .191%. He argues that the state failed to meet the criteria set out in Ex parte Mayo, 652 So.2d 201
(Ala. 1994). In Mayo, the Alabama Supreme Court held that I-5000 test results are admissible if the prosecution "show[s] that the test was administered by a qualified officer in the usual manner and that the I-5000 in question passed inspection before and after the test." 652 So.2d at 211. Here, the state established through the testimony of state trooper W.A. Neal, who administered the I-5000 test, that Trooper Neal was qualified to administer the blood-alcohol test and that he administered the test to the appellant in the usual manner. The appellant specifically argues, however, that the state did not properly prove that the I-5000 passed inspection before and after the test was administered. *Page 359 
The state offered into evidence a certified copy of the logbook for the I-5000 machine used to test the appellant. This logbook is used to record the dates and results of all routine calibration inspections, as well as the dates and results of all blood-alcohol concentration tests. The logbook reflects that on November 5, 1993 (15 days before the appellant's test), and on December 2, 1993 (12 days after the appellant's test), the I-5000 in question was calibrated. The logbook further indicates that the I-5000 checked out "O.K." on those two dates (C.R.90-91), and thus was functioning properly on those dates. The custodian of the logbook, Gina Savage, of the Montgomery County Sheriff's Office, testified that the logbook was kept in the regular course of business and that information in the logbook was routinely reduced to writing as it was obtained.
The state offered the logbook into evidence under the business records exception, and the trial court admitted the logbook over the appellant's objection; however, after the trial court admitted the logbook, it cautioned the jury that the logbook was admitted not for the purpose of demonstrating the proof of its contents, but simply to show that such a logbook existed. (R. 125-26.) This instruction was repeated at the close of the trial.
Although the logbook was properly admitted into evidence, the trial court incorrectly cautioned jurors that they could not consider it for the purpose of demonstrating the proof of its contents, i.e., that the I-5000 had been inspected before and after the appellant was tested and that it was functioning properly. The logbook was admissible into evidence under the business records exception to the hearsay rule and could be considered as substantive evidence to show that the I-5000 had been properly calibrated and was operating properly at the time the blood-alcohol test was administered to the appellant. Numerous cases have held that the logs pertaining to the calibration of intoxilyzer machines and the performance of such tests are admissible for this purpose. Ex parte Bush,474 So.2d 168, 171 (Ala. 1985); Vizzina v. City of Birmingham,533 So.2d 652 (Ala.Cr.App. 1987), aff'd, 533 So.2d 658 (Ala. 1988); Harperv. City of Troy, 467 So.2d 269 (Ala.Cr.App. 1985); Parker v.State, 397 So.2d 199, 202 (Ala.Cr.App. 1981), cert. denied,397 So.2d 203 (Ala. 1981); Bagony v. City of Birmingham,365 So.2d 336 (Ala.Cr.App. 1978). See § 12-21-43, Ala. Code 1975; Mayo, supra, 652 So.2d at 209.
Therefore, the I-5000 logbook was correctly admitted into evidence pursuant to the business records exception as substantive proof that the machine had passed inspection and was properly calibrated and operating at the time of the appellant's test. The state met the criteria set out inMayo. Thus, there was no error in allowing into evidence the results of the I-5000 blood-alcohol test indicating that the appellant's blood-alcohol concentration was .191%.
 III.
The appellant contends that the trial court's supplemental instructions to the jury after the jury indicated that it was deadlocked during deliberations improperly changed the standard for deliberation from "beyond a reasonable doubt" to "reaching harmony which does not compromise a jury's conscience."
When the jury indicated that it was deadlocked, the trial court issued the following instructions:
 "THE COURT: All right. Sit down and let me put it to you, without overstepping my bounds as a judge, my job is not to comment on the evidence that has been presented to you or to express an opinion one way or the other. I have to be very careful how I put all of this. This has not been a very long case. It is an important case, but it hasn't been very long. It hasn't been very complicated as it relates to factual situations.
 [The trial court, then, restated the applicable law.]
 "I don't know of any other 12 folks from Montgomery County who could be in a better position than you all to render a decision in this case. After all, you all sat here and listened to the case. You all are reasonable folks.
 "If they have proven the case with everything I told you about, then your verdict *Page 360 
should be: 'We, the jury, find the defendant guilty.' If they have not proven their case, irrespective of what your thoughts may be, your verdict would be: 'We, the jury, find the defendant not guilty,' and you would just return the verdict.
 "And if you can reconcile any differences between you in harmony, just weigh — you don't have to compromise your conscience to agree with someone else. I would like for you to return to the jury room and see if you can do that.
 "Nobody is going to be punished if you can't. I will tell you that now. Nobody is going to be asked to compromise their conscious. Your position is your stand. I just needed to just sort of explain a few things to you to see if you can spend some more time, to see if you can resolve it."
(R. 262-63.)
" 'The general rule in Alabama has been that it is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict as along as the judge does not suggest which way the verdict should be returned.' " King v. State, 574 So.2d 921, 927-28
(Ala.Cr.App. 1990), quoting McMorris v. State, 394 So.2d 392
(Ala.Cr.App. 1980), cert. denied, 394 So.2d 404 (Ala. 1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983
(1981). An Allen v. United States, 164 U.S. 492, 17 S.Ct. 154,41 L.Ed. 528 (1896), charge, also known as a "dynamite charge," is permissible if the language of the charge is not coercive or threatening. Grayson v. State, 611 So.2d 422, 425
(Ala.Cr.App. 1992); King v. State, 574 So.2d at 928.
We find that in giving the supplemental charge, the trial court here did not suggest which way the verdict should be returned and did not change the standard for deliberation. Additionally, the charge was not in any way coercive or threatening. Thus, no error occurred in the supplemental charge in the jury.
 IV.
The appellant contends that the trial court erred by denying his motion for a new trial based on the alleged improper admission of the test results from the I-5000 and the court's supplemental charge to the jury. Since we have held that the trial court properly admitted the appellant's I-5000 test results and that the trial court's supplemental charge to the jury was appropriate, we find no error in the trial court's denial of the motion for a new trial.
For the reasons stated above, the judgment of the trial court is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; RULE 39(k) MOTION GRANTED; AFFIRMED.
All the Judges concur.