Janis Rodgers Steiner was convicted in Baldwin District Court of driving under the influence of alcohol, a violation of §32-5A-191(a), Ala. Code 1975. She appealed to Baldwin Circuit Court, and a jury found her guilty of driving under the influence.
 I.
Before trial, Steiner moved to suppress the introduction of the results of an Intoxilyzer 5000 ("I-5000") test performed by Alabama State Trooper Stan Stabler on the grounds that the State would be unable to establish a proper predicate for the introduction of the test results. Steiner argued that the State would be unable to prove that the I-5000, a device that measures blood alcohol content, was in good working condition at the time the test was administered to Steiner because the officer who tested the device to ensure that it was properly calibrated, Trooper Larkus Smith, was not available at trial for cross-examination. The State argued that the introduction of the logbook in which Trooper Smith made entries would be sufficient to establish that the device was properly calibrated. Steiner cited §§ 12-21-300 and 12-21-301, Ala. Code 1975, and Rule 803(8)(B), Ala.R.Evid., in support of her argument that the logbook would be admissible as a substitute for Trooper Smith's testimony only if the State had given proper notice of its intent to use only the logbook at trial. The trial court then denied Steiner's motion to suppress.
Trooper Stabler testified at trial that he was certified by the Department of Forensic Sciences to perform the I-5000 test and that he performed the test on Steiner using the procedure set forth in the rules and regulations of the Department of Forensic Sciences. Stabler testified that Trooper Smith was a member of the Department of Public Safety's implied consent unit which inspects all I-5000 devices used in the state. Trooper Smith did not testify at trial. The I-5000 logbook, indicating that the device had passed inspection during the calendar *Page 1310 
months immediately preceding and following Steiner's blood alcohol test, was introduced to establish that the device was in proper working order. The results of the test, showing that Steiner's blood alcohol level was between .112 and .119 percent, were then introduced. The test results indicated that Steiner was intoxicated beyond .08 percent, that gives rise to the statutory presumption of intoxication. Steiner argues that the introduction of the results of the tests constitutes reversible error.
The State argues that the I-5000 logbook was admissible under the business records exception to the hearsay rule. Rule 803(8), Ala. R. Evid. Steiner argues that the logbook was not admissible because, she says, it falls within the "law enforcement exception" to the business records exception found in Rule 803(8)(B). The State contends that the law enforcement exception is inapplicable to the inspection log book for the I-5000. We agree with the State.
Section 32-5A-194(a)(1), Ala. Code 1975, provides that blood alcohol tests shall be admissible so long as the tests "have been performed according to the methods approved by the Department of Forensic Sciences." The rules of the Alabama Department of Forensic Sciences relating to chemical tests for intoxication, Chapter 370-1-1, provide that breath-testing equipment shall be inspected at least once each calendar month by an implied consent unit inspector for the Department of Public Safety. (C.R.45-52.) Thus, blood alcohol test results may be admissible under the statute if the officer who performed the inspection testifies that the device was properly calibrated.
In Ex parte Mayo, the Alabama Supreme Court set out an alternate method for establishing the necessary predicate for the introduction of I-5000 results:
 "To establish a predicate for admitting the test results, without reliance on the statute [§ 32-5A-194, Ala. Code 1975], there should be evidence that:
 "(1) the theory underlying the photoelectric intoximeter test is valid and generally accepted as such;
 "(2) the intoximeter is a reliable instrument and is generally accepted as such;
 "(3) the intoximeter test was administered by a qualified individual who could properly conduct the test and interpret the results, and
 "(4) the instrument used in conducting the test was in good working condition and the test was conducted in such a manner as to secure accurate results."
652 So.2d 201, 209 (Ala. 1994) (quoting Moore v. State,442 So.2d 164, 167 (Ala.Cr.App. 1983)).
Under either method of establishing the predicate for the introduction of test results, the State is required to show that the device was in proper working condition when the test was administered. This showing can be made in one of two ways. The officer who performed the inspection of the device can give direct testimony that it was in proper working condition, or the State may introduce a certified copy of the inspection logbook that reflects that the device passed inspection before and after the test was administered. See Gwarjanski v. State,700 So.2d 357 (Ala.Cr.App. 1996).
 A.
Steiner's primary argument relies on §§ 12-21-300 and12-21-301, Ala. Code 1975, which establish the requirements for the introduction into evidence of analyses or examinations performed by, or pursuant to the authority of, the Alabama Department of Forensic Sciences. Section 12-21-300, which became effective on January 1, 1996, provides:
 "(a) In any criminal case, or juvenile or family court case which is of a criminal nature, the prosecuting attorney may offer a certificate of analysis as described below, in lieu of direct testimony. The court shall receive as evidence the certificate of analysis from any of the following:
 "(1) A person performing an analysis or examination in any laboratory operated by the Alabama Department of Forensic Sciences or authorized by the department to conduct an analysis or examination of the type performed. *Page 1311 
 "(2) A person performing an analysis or examination in any criminalistics laboratory established pursuant to federal law.
 "(b) To be admissible pursuant to this section, a certificate of analysis shall contain all of the following:
 "(1) The date and time the evidence was delivered to the facility.
 "(2) The name of the person making the delivery, and the name of the person receiving the delivery.
"(3) A brief description of the evidence.
 "(4) The type of examination or analysis requested.
 "(5) The name of the person making the examination or analysis.
 "(6) The date or dates of the examination or analysis.
 "(7) The results of the examination or analysis.
 "The certificate of analysis shall give the name and address of the facility in which the examination or analysis was made, and it shall be signed by and sworn to as true and correct, under penalty of law, by the person making the examination or analysis."
Section 12-21-301 provides that the party seeking to introduce the certificate of analysis in lieu of direct testimony "shall, not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis."
Steiner argues that these Code sections apply to the admission of the results of the routine calibration tests performed on the I-5000. She argues that the proof relating to the device's calibration was inadmissible at her trial because the State failed to give written notice of its intent to offer this proof. §§ 12-21-300 and 12-21-301, Ala. Code 1975.
Although the procedure for the inspection of the I-5000 is governed by the rules of the Alabama Department of Forensic Sciences and the person performing the inspection must be certified by the department, the calibration inspections performed on the I-5000 are not the type of "laboratory analyses" governed by § 12-21-300. When read in their entirety, it is evident that §§ 12-21-300 et seq. are intended to govern the admissibility of the results of tests and analases performed on evidence gathered during a criminal investigation, as opposed to the results of tests or calibration of the equipment used in the laboratory. Sections 12-21-300 and12-21-301, Ala. Code 1975, do not govern the admissibility of proof of calibration of the I-5000.
 B.
Steiner argues that if §§ 12-21-300 and 12-21-301 do not apply to the admission of the results of calibration testing of the I-5000, the logbook was still inadmissible hearsay under the Alabama Rules of Evidence. She argues that the introduction of the logbook, without Trooper Smith's testimony, violated her right to confront witnesses against her as is guaranteed in theSixth Amendment to the United States Constitution and in Art. I, § 6, of the Constitution of Alabama, 1901. We find this argument to be without merit.
 1.
Steiner argues that because Trooper Smith, who inspected the I-5000 both before and after the device was used to measure her blood alcohol level, was a law enforcement officer, the logbook was inadmissible without his testimony under Rule 803(8)(B), Ala. R. Evid. Rule 803(8), Ala. R. Evid., provides that the following shall be admissible as exceptions to the rule against hearsay:
 "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, when offered against the defendant in criminal cases, matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state or governmental authority in criminal proceedings, factual findings resulting from an investigation made pursuant to authority granted by law, unless the *Page 1312 
source of information or other circumstances indicate lack of trustworthiness."
(Emphasis added.)
Thus, while certain business records are admissible hearsay under Rule 803(8), certain law enforcement records are excepted from Rule 803(8) and are therefore inadmissible. The question whether the results of the inspection of an I-5000 by a state trooper certified to perform such inspections are within the business records exception set out in Rule 803(8)(B), and are therefore admissible appears to be one of first impression.
Other jurisdictions have applied the law enforcement exception "only to matters observed or investigated by police in adversarial, investigative circumstances where those involved may well have a motivation to misrepresent in order to secure a conviction." Charles Gamble, McElroy's AlabamaEvidence, § 266.01(5) (5th ed. 1996) (citations omitted). The inspection of the calibration of the I-5000 is an administrative function that is not performed pursuant to the investigation of any particular person. Therefore, we hold that a certified copy of the logbook relating to the I-5000 is admissible under the business records exception to the rule against hearsay when offered to show that the device was inspected to insure that the device had been properly calibrated.
The Hawaii Intermediate Court of Appeals, in allowing into evidence an inspection logbook for a device used to test a person's blood alcohol level, wrote:
 "The information on the Log was clearly hearsay. However, the court admitted it under the public records exception to the hearsay rule set forth in Hawaii Rules of Evidence (HRE) Rule 803(b)(8)(B) which provides:
 " 'Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and law enforcement personnel, . . . unless the source of information or other circumstances indicate lack of trustworthiness.'
". . . .
 "The Log falls within the HRE Rule 803(b)(8)(B) exception. It constitutes a record or report of a public agency, the HPD [Honolulu Police Department]. It includes matters observed and reported by a HPD operator-supervisor who tested the Intoxilyzer for accuracy as required by provisions of the Rules. The only issue is whether the Log is excludable from the public records and reports exception to the hearsay rule as 'matters observed by . . . law enforcement personnel' in a criminal case.
 "Federal Rules of Evidence (Fed.R.Evid.) 803(8)(B)is identical to HRE Rule 803(b)(8)(B). In construing the exclusion provision of Fed.R.Evid. 803(8)(B), the Court of Appeals of the Second Circuit took a very restrictive view, holding that
 " 'in criminal cases reports of public agencies setting forth matters observed by police officers and other law enforcement personnel and reports of public agencies setting forth factual findings resulting from investigations made pursuant to authority granted by law cannot satisfy the standards of any hearsay exceptions if those reports are sought to be introduced against the accused.'
 "United States v. Oates, 560 F.2d 45, 84 (2d Cir. 1977). The Oates restrictive view has been criticized. See 4 J. Weinstein M. Berger, Weinstein's Evidence § 803(8)[04] (1991).
 "The Court of Appeals of the Ninth Circuit concluded that 'the exclusionary provisions of Rule 803(8)(B) were intended to apply to observations made by law enforcement officials at the scene of a crime or the apprehension of an accused and not "records of routine, nonadversarial matters" made in a nonadversarial setting.' " United States v. Wilmer, 799 F.2d 495, 500-01 (9th Cir. 1986) (quoting United States v. Orozco, 590 F.2d 789, 793 (9th Cir.), cert. denied, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288
(1979)). Wilmer held that, in a DUI case, the calibration report of a breathalyzer maintenance operator is admissible *Page 1313 
under Fed.R.Evid. 803(8)(B). See United States v. DeWater, 846 F.2d 528 (9th Cir. 1988) (in a DUI case, the intoxilyzer test results were admissible under the public records and reports exception to the hearsay rule).
 "We opt to follow the rationale in the Orozco, Wilmer, and DeWater cases. Clearly, [the inspecting officer's] report in the Log of his testing of the Intoxilyzer for accuracy on the specified dates constituted a record of routine, nonadversarial matters made in a nonadversarial setting. See State v. Smith, 66 Or. App. 703, 707, 675 P.2d 510, 512 (1984) (certificates of breathalyzer inspections relate to 'the routine function of testing breathalyzer equipment to insure that it gives accurate readings)."
State v. Ofa, 9 Haw. App. 130, 828 P.2d 813, 816-17 (1992). We adopt the reasoning of the Hawaii appellate court in holding that the inspection logbook was admissible under the business records exception to the hearsay rule.
 2.
Steiner argues that her constitutional right to confront the witnesses against her was violated by the introduction of the inspection logbook without Officer Smith's testimony. Steiner correctly cites Grantham v. State, 580 So.2d 53 (Ala.Cr.App. 1991), in support of her argument that "evidence that would normally be admissible under an exception to the hearsay rule may still be inadmissible because it violates the confrontation clause of the Sixth Amendment." Id. at 55. In Grantham, the defendant challenged the admission of a toxicology report identifying a substance in his possession as an illegal drug. The case before us is distinguishable from Grantham on the grounds noted previously. The inspection of the calibration of the I-5000 is a ministerial duty. It is not performed in an adversarial setting, and it is not performed with a specific defendant in mind. Additionally, this court has repeatedly held that a certified copy of an inspection log book is admissible, in the absence of the testimony of the officer performing the inspection, to lay a predicate for the introduction of the results of a blood alcohol test.[1] See Ex parte Bush,474 So.2d 168 (Ala. 1985); Gwarjanski v. State, supra; Vizzina v. City ofBirmingham 533 So.2d 652 (Ala.Cr.App. 1987), aff'd,533 So.2d 658 (Ala. 1988).
The introduction of the inspection logbook for the I-5000 without the testimony of Trooper Smith did not violate the Confrontation Clause of either the United States Constitution or the Alabama Constitution of 1901.
 C.
Steiner's final argument on this issue is that the results of the blood alcohol test were inadmissible because, she says, the State failed to establish a proper predicate in that it failed to comply with § 32-5A-194(a)(1), Ala. Code 1975, which requires the State to show that the test was "performed according to the methods approved by the Department of Forensic Sciences by an individual possessing a valid permit issued by the Department of Forensic Sciences." She argues that the test results were inadmissible because the State failed to admit at trial an "IC-12 form". Chapter 370-1-1-.02 of the rules of the Department of Forensic Sciences regarding chemical tests for intoxication, requires that an IC-12 inspection form be filled out when an I-5000 is tested for calibration. Steiner argues that because this form was not introduced at trial, the trial court erred in admitting the test results. We find this argument to be without merit.
We again must note that Ex parte Mayo, 652 So.2d 201, 208
(Ala. 1994), held that the State could establish a predicate for the admission of the blood alcohol tests through traditional evidentiary rules for the admission of scientific test results in lieu of proving strict compliance with §32-5A-194. In the instant case the State established a predicate for the introduction of the test results using the method outlined by Mayo. The prosecution introduced certified copies of the I-5000 logbook as evidence that "the instrument *Page 1314 
used in conducting the test was in good working condition and the test was conducted in such a manner as to secure accurate results." Mayo, 652 So.2d at 209.
The trial court did not err in admitting the results of Steiner's blood alcohol test.
 II.
Steiner argues that the trial court committed reversible error in denying her motions to dismiss, for a mistrial, and for a new trial. These motions were based primarily upon Steiner's motion to suppress the results of the blood alcohol test. Steiner argued that the other evidence presented by the State was insufficient to support a guilty verdict. In an oral motion made at the close of the State's evidence, Steiner also argued that the State's failure to provide all of the discovery she had requested before trial warranted the dismissal of the case. Because we held in Part I that the results of Steiner's blood alcohol tests were admissible, we address only the discovery issue here.
Before trial, Steiner requested, among other things, that the State produce
 "all books, hand-outs, teaching outlines, pamphlets, manuals, or other instructional material . . . physically or orally distributed to students or used or relied upon by instructors at the Alabama Criminal Justice Center or other location at which Trooper Stan Stabler was instructed and received certification on the use and administration of the Intoxilyzer-5000 test."
(C.R. 16.) Steiner's discovery request was granted by the trial court. The implied consent unit of the Alabama Department of Public Safety provided Steiner with an instruction manual used in the certification course for I-5000 operators. During Steiner's cross-examination of Trooper Stabler, Stabler testified that in addition to the manual, he was provided with "copies of forms that we use" and recently issued court cases to read. (R. 64.) Trooper Stabler additionally testified that the instructors lectured from notes during the certification course.
Steiner argues here, as she did below, that the failure of the State to provide the forms, court cases, and notes used by instructors in the certification course warranted a mistrial. Steiner alleged at trial that the evidence not produced by the State was material, but she made no offer of proof as to how she expected to use the items that the State allegedly had failed to produce, nor did she make any showing of prejudice suffered as a result of the State's failure to produce these items.
Whether and to what extent a trial court imposes sanctions for noncompliance with discovery pursuant to Rule 16, Ala. R.Crim.P., rests within the sound discretion of the trial court. McCrory v. State, 505 So.2d 1272, 1279 (Ala.Cr.App. 1986). Because Steiner has made no showing as to how the State's failure to provide the requested materials prejudiced her substantial rights, she is not entitled to a reversal on this issue. See McLemore v. State, 562 So.2d 639, 645
(Ala.Cr.App. 1989).
For the above-stated reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Before the effective dates of the Alabama Rules of Evidence
and §§ 12-21-300 et seq., i.e. January 1, 1996.