BROWN, Judge.
The appellant, Walter Todd McDaniel, was convicted in St. Clair District Court of several traffic offenses, including driving under the influence of alcohol, a violation of § 32-5A-191, Code of Alabama 1975. This case comes to us on a direct appeal from district court, pursuant to Rule 30.2, Ala.R.Crim.P., and § 12-12-72(1), Code of Alabama 1975. On appeal, the appellant challenges only his conviction for driving under the influence of alcohol. As required by Rule 30.2, Ala.R.Crim.P, the parties have stipulated to the facts, and the appellant has waived his right to a jury trial.
Following his arrest, the appellant submitted to chemical testing by the Intoxilyzer 5000 (“1-5000”). His first breath test resulted in a 0.10% blood-alcohol reading. The second test rendered an “invalid” result because the appellant was unable to provide a sufficient breath sample for analysis. Trooper Allen Vines, the arresting officer, deemed the appellant’s unsuccessful attempt a “refusal.” At trial, the state introduced the result of the first test over the appellant’s objection.
The appellant contends that the trial court erred by admitting into evidence testimony concerning the results of the 1-5000 blood-alcohol test administered to him by the arresting officer. Specifically, the appellant argues that because, he says, the state failed to establish the statutory predicate for admission of the test results, as required by § 32-5A-194(a)(l), Code of Alabama 1975, the test result was inadmissible.
Section 32-5A-194(a)(1) provides:
“(a) Upon the trial of any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person’s blood at the alleged time, as determined by a chemical analysis of the person’s blood, urine, breath or other bodily substance, shall be admissible. Where such a chemical test is made the following provisions shall apply:
“(1) Chemical analyses of the person’s blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the Department of Forensic Sciences and by an individual possessing a valid permit issued by the Department of Forensic Sciences for this purpose. The court trying the case may take judicial notice of the methods approved by the Department of Forensic Sciences. The Department of Forensic Sciences is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the Department of Forensic Sciences. The Department of Forensic Sciences shall approve permits required in this section only for employees of state, county, municipal, and federal law en- *1307 foreement agencies and for laboratory personnel employed by the Department of Forensic Sciences.”
(Emphasis added.) Those “methods approved by the Department of Forensic Sciences” referred to in § 32-5A-194(a)(1) are found in the Alabama Administrative Code at Rule 370-1-1-.01(4)(a) and (b) of the rules of the Alabama Department of Forensic Sciences, entitled “Report of Breath Test Result”:
“(a) Two (2) samples, of breath shall be tested. Wait at least two (2) minutes, but not more than fifteen (15) minutes after the first test to do the second test.
“Report the lower test result. Maintain the record of each test result.
“(b) Any person directed to submit to the breath test procedure requiring two (2) breath samples and fails or refuses to give two samples sufficient for analysis by the Intoxilyzer 5000 shall be deemed to have refused the entire test and such person shall be reported as having refused to submit to the chemical test.”
(Emphasis added.) In order to lay a proper predicate for the admission of test results under § 32-5A-194(a)(1), the state must show that the test was administered in strict compliance with the aforementioned administrative code section. Cf. Britton v. State, 631 So.2d 1073, 1077 (Ala.Cr.App.1993).
McDaniel contends that because the state had the results from only one valid breath test, those results were inadmissible because, he says, the statutory predicate was not established. We agree that because the administrative rules adopted by the Department of Forensic Sciences require that two valid breath tests be administered, the state failed to satisfy the statutory requirement; however, the statutory predicate set out in § 32-5A-194(a)(1) is only one 'way by which the 1-5000 test results can be admitted into evidence.
An alternative method is the establishment of a traditional evidentiary predicate, wherein the prosecution establishes “that the test was administered by a qualified officer in the usual manner and that the I-5000 in question passed inspection before and after the test.” Ex parte Mayo, 652 So.2d 201, 211 (Ala.1994); Senn v. State, [Ms. CR-96-0839, August 22, 1997] — So.2d - (Ala.Cr.App.1997). In determining what constituted a proper evidentiary predicate, the Supreme Court, in Mayo, cited with approval the following language from our decisions in Moore v. State, 442 So.2d 164, 167 (Ala.Cr.App.1983), and McDaniel v. State, 506 So.2d 360, 364 (Ala.Cr.App.1986):
“To establish a predicate for admitting the test results, without reliance on the statute, there should be evidence that:
“(1) the theory underlying the photoelectric intoximeter [now, the 1-5000] test is valid and generally accepted as such;
“(2) the intoximeter [1-5000] is a reliable instrument and generally accepted as such;
“(3) the intoximeter [1-5000] test was administered by a qualified individual who could properly conduct the test and interpret the results; and
“(4) the instrument used in conducting the test was in good working condition and the test was conducted in such a manner as to secure accurate results.”
See also Jones v. City of Summerdale, 677 So.2d 1289, 1291 (Ala.Cr.App.1996); C. Gamble, McElroy’s Alabama Evidence § 490.01(3) (5th ed.1996).
In Gwarjanski v. State, 700 So.2d 357 (Ala.Cr.App.1996), this court upheld the defendant’s DUI conviction, determining that a traditional evidentiary predicate had been established through the testimony of the state trooper who had administered the 1-5000 test. The trooper testified that he was qualified to administer the blood-alcohol test, and that he administered the test to the appellant in the usual manner. We further held that the admission into evidence of the 1-5000 logbook was sufficient “substantive proof that the machine had passed inspection and was properly calibrated and operating at the time of the appellant’s test.” Id., at 359.
In the present case, our review of the record convinces us that the state failed to lay a traditional evidentiary predicate. Indeed, the state concedes as much. The stipulation of fact does, at least arguably, ac *1308 knowledge the validity of the 1-5000 test and that the usual operating procedures were followed. However, the stipulation of fact contains no mention of Trooper Vines’s qualifications to administer the 1-5000 test, and it does not establish that the 1-5000 used to test the appellant passed inspection before and after the test. Accordingly, because the state did not lay a sufficient traditional evi-dentiary predicate, the trial court erred in allowing Trooper Vines to testify concerning the results of the 1-5000 test.
Moreover, just as in Senn v. State, admission of the 1-5000' test results was not harmless error. Although the stipulation of fact noted that Trooper Vines gave other testimony concerning the appellant’s intoxicated condition at the time of his arrest, including the fact that he smelled the odor of alcohol on the appellant’s breath, the evidence of intoxication in this case was conflicting. That portion of the stipulation of fact summarizing the appellant’s testimony provided that he was suffering from a chronic, severe stomach disorder, and that he was taking numerous prescribed medications for the treatment of this condition. He maintained that his condition was not caused by intoxication, but rather, was the result of his having become severely ill while traveling to Pell City. “In light of the conflicting testimony and the great weight often given to results from sophisticated, technical machinery,” Ex parte Curtis, 502 So.2d 833, 835 (Ala.1986), we are unable to say that admission of Trooper Vines’s testimony concerning the 1-5000 test results was harmless error.
The judgment of the trial court is reversed and this cause is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.