LYONS, Justice.
M.T.S., Jr., was adjudicated delinquent in the juvenile court on underlying charges of speeding and driving under the influence of alcohol. See § 32-5A-171(2) and § 32-5A-191(a)(2), Ala.Code 1975, respectively. The Court of Criminal Appeals affirmed, on December 18, 1998, with an unpublished memorandum. M.T.S. v. State (No. 97-1637), 744 So.2d 960 (Ala.Crim.App.1998) (table). This Court granted M.T.S.’s petition for certiorari review, and we now reverse and remand.
On March 13, 1998, State Trooper Charles Rogers arrested M.T.S. for speeding and driving under the influence. Trooper Rogers tested M.T.S.’s blood-alcohol content shortly thereafter with the In-toxilyzer 5000 (“1-5000”), a blood-alcohol testing device; the test showed a blood-alcohol content of .05%. The 1-5000 had been inspected three days earlier. Separate calibration tests recorded by the inspector showed a reading of 0.083% and 0.075% when a 0.080% calibration solution vapor was introduced into the instrument. The inspector recorded “PASS INSPECTION” on the logbook entry.
Department of Forensic Sciences Rule 370 — 1—1—.02(1)(i) states:
“(i) Calibration Check. The Department of Forensic Sciences shall verify the concentration of each lot of calibration solution used for breath test instrument calibration....
[[Image here]]
“Enter pass if the instrument produces a reading between 0.076% and 0.08k% inclusive when a 0.080% calibration solution vapor is introduced into the instrument upon duplicate analyses. Enter fail if the instrument produces any other reading upon the introduction *158 of a 0.080% calibration solution vapor into the instrument and remove the instrument from service until corrected and re-inspected....”
(Emphasis added.)
At trial, the State sought to lay its predicate for the admission of M.T.S.’s blood-alcohol-content-test results by introducing into evidence a copy of the inspection logbook. The trial court allowed the logbook entry and the test results to be admitted into evidence.
In affirming the delinquency adjudication, the Court of Criminal Appeals addressed this issue in its unpublished memorandum:
‘When the state moved to admit the 1-5000 test results, M.T.S. made the juvenile court aware of the apparent discrepancy between the inspector’s clear notation in the 1-5000 machine’s logbook that the machine had passed inspection on March 10 and the numerical entries in the logbook for the calibration check performed on that date reflecting that the machine had produced readings of ‘.083’ and ‘.075.’ We find that any discrepancy in this regard was a matter for the juvenile court to resolve. The juvenile court did not abuse its discretion by accepting as accurate the inspector’s notation that the 1-5000 machine used on M.T.S. had passed inspection on March 10 before and after the blood-alcohol test was administered to M.T.S. Therefore, we find that the state established a sufficient predicate for admission of the results of the 1-5000 test that was administered to M.T.S. See Steiner [v. State], 706 So.2d [1308] at 1313-14 [(Ala.Crim.App.1997)]. See also Gwarjanski v. State, 700 So.2d 357, 358 (Ala.Cr.App.1996) (holding that the admission of the 1-5000 logbook was sufficient ‘substantive proof that the machine had passed inspection and was properly calibrated and operating at the time of the [defendant’s] test’).”
M.T.S. argues that the juvenile court erred by admitting the results of the I-5000 blood-alcohol test. He argues that Steiner v. State, 706 So.2d 1308, 1310 (Ala.Crim.App.1997), and Gwarjanski v. State, 700 So.2d 357 (Ala.Crim.App.1996), hold that, in order to lay a proper predicate for the admission of results of an 1-5000 test, the State must show that the test results were in strict compliance with the rules of the Department of Forensic Sciences. In addition, he argues, the State must prove that the testing device was in proper working order when the test was administered, either by having the officer who inspected the device testify that it was working properly when it was used to test the defendant’s blood-alcohol content, or by introducing a certified copy of the inspection logbook showing that the device passed inspection before and after the test was administered.
In Senn v. State, 710 So.2d 503 (Ala.Crim.App.1997), the Court of Criminal Appeals stated that the State may seek admission of 1-5000 test results through the statutory predicate required by § 32-5A-194(a)(1), Ala.Code 1975, or through a traditional evidentiary predicate, which requires the prosecution to show that a qualified officer administered the test and that the 1-5000 in question passed inspection. The court concluded that'the State had failed to lay a the proper predicate through either method. Specifically, the court found that the State had failed to lay the proper predicate through the traditional evidentiary foundation because it “did not sufficiently establish that the 1-5000 used to test the appellant had passed inspection before and after the test.” Id. at 504. While the State established that the administrator was qualified to administer the test and that he administered the test in the usual manner, the court found that the State presented no evidence to show that the 1-5000 used to test Senn was checked for accuracy after the test.
In this case, the State did not prove that the 1-5000 was accurate before the test. Although the inspector noted in the logbook that the 1-5000 passed inspection *159 before M.T.S.’s test, the logbook also reflects that on one of the two required analyses the 1-5000 registered a calibration-test result outside the range deemed acceptable by the Department of Forensic Sciences. The 1-5000 test results were not in strict compliance with Rule 370-1-l-.02(l)(i) of the Department of Forensic Sciences Rules and Regulations. The rule unambiguously requires that the reading be between 0.076% and 0.084% inclusive. A reading of 0.075% on one of the duplicate analyses is inconsistent with the requirement of the rule. Rule 370-1-1-.02(1) requires that an instrument be removed from service if any failure is not corrected on site by the inspector. The State presented no evidence indicating that the inspector corrected the defect after the March 10 inspection.
The State did not establish a proper predicate for admitting the results of M.T.S.’s blood-alcohol test. The Court of Criminal Appeals has held that admitting such test results without first laying a proper predicate is reversible error. Davis v. State, 712 So.2d 1115 (Ala.Crim.App.1997), and McDaniel v. State, 706 So.2d 1305 (Ala.Crim.App.1997). The juvenile court did not have the discretion to cure the absence of a proper predicate, given the unambiguous requirement of Rule 370-l-l-.02(l)(i).
The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, JOHNSTONE, and ENGLAND, JJ., concur.
BROWN, J., recuses herself.*