[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 201 
The appellant, Jerrold Vernon Ewing, appeals from the trial court's order revoking his probation.
On August 10, 1998, Ewing pleaded guilty to first-degree criminal mischief, a violation of § 13A-7-21(a), Ala. Code 1975. He was sentenced, as a habitual felony offender, to 15 years' imprisonment. The sentence was suspended, and Ewing was placed on supervised probation for 5 years. On July 5, 2000, probation officer Bobby Newsome filed a delinquent probationer's report against Ewing, alleging that Ewing had violated the terms and conditions of his probation by committing a new offense, namely, driving under the influence. On December 13, 2000, a probation- revocation hearing was held. After the hearing, the trial court revoked Ewing's probation.
At the revocation hearing, Lisa Hamilton, an investigator with the Huntsville Police Department, testified that on June 28, 2000, she observed a blue Ford Taurus automobile, driven by Ewing, weaving between lanes and speeding. She followed the vehicle for approximately half a mile and then radioed the department and requested that a patrol officer stop the vehicle. Investigator Hamilton testified that Officer Winston, also with the Huntsville Police Department, responded to her request and stopped the vehicle. Over defense counsel's objection, Investigator Hamilton testified that Ewing was given an Intoxilyzer 5000 test after he was taken to the jail, and that the results showed that Ewing had a blood-alcohol level of .20 percent. Investigator Hamilton stated that she was not present when the Intoxilyzer 5000 was administered to Ewing and that she had no personal knowledge as to whether the test was administered properly. Investigator Hamilton also stated that a "report" — she did not identify what the report was or who prepared it — indicated that only one test was administered because Ewing refused to take a second confirmation test.
 I.
Ewing contends that the trial court erred in allowing Investigator Hamilton to testify regarding the results of the Intoxilyzer 5000 test. (Issue II in Ewing's brief.)
First, Ewing contends that the results were inadmissible because there was only one valid test (he refused to take the second confirmation test), and, he says, § 32-5A-194, Ala. Code 1975, requires that two tests be administered. Section 32-5A-194 provides, in pertinent part:
 "(a) Upon the trial of any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have *Page 202 
 been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person's blood at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such a chemical test is made the following provisions shall apply:
 "(1) Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the Department of Forensic Sciences and by an individual possessing a valid permit issued by the Department of Forensic Sciences for this purpose. The court trying the case may take judicial notice of the methods approved by the Department of Forensic Sciences. The Department of Forensic Sciences is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the Department of Forensic Sciences. The Department of Forensic Sciences shall approve permits required in this section only for employees of state, county, municipal, and federal law enforcement agencies and for laboratory personnel employed by the Department of Forensic Sciences."
The methods approved by the Department of Forensic Sciences are found in the Alabama Administrative Code, Alabama Department of Forensic Sciences, Rule 370-1-1-.01. Specifically, Rule 370-1-1-.01(5), provides, in pertinent part:
"(5) Report of Breath Alcohol Test Result.
 "(a) Intoxilyzer 5000. Two (2) samples of breath shall be tested. A second breath sample shall be tested at no less than two (2) minutes and not more than fifteen (15) minutes after the first sampling as reflected by the time stamped on the printer ticket. Report the lower test result if they are different. Maintain the record of both test results.
". . . .
 "(c) A person directed to submit to a breath alcohol test procedure requiring two (2) breath samples, who fails to provide two (2) complete and acceptable samples sufficient for analysis by an approved evidential breath alcohol testing instrument shall be deemed to have refused the entire test. Such person shall be reported as having refused to submit to the chemical test."
We agree that in a criminal trial, absent two valid tests, the results of an Intoxilyzer 5000 test would be inadmissible under § 32-5A-194. See, e.g., McDaniel v. State, 706 So.2d 1305 (Ala.Crim.App. 1997). However, a probation-revocation *Page 203 
proceeding is not the same as a criminal trial. "Strict adherence to the rules of evidence is not required in revocation proceedings." Holcombv. State, 644 So.2d 46, 47 (Ala.Crim.App. 1994). In addition, evidence that an accused refused to submit to a sobriety test is admissible as evidence of the accused's guilt. See § 32-5A-194(c), Ala. Code 1975;Hill v. State, 366 So.2d 318 (Ala. 1979); and Gibson v. City of Troy,481 So.2d 463 (Ala.Crim.App. 1985). Here, Ewing objected solely on the ground that only one valid test had been administered. He did not challenge the State's failure to lay any other part of the statutory predicate under § 32-5A-194. We believe that in a probation-revocation proceeding, where the rules of evidence are relaxed, the lack of one of two valid Intoxilyzer tests, alone, will not render the results of the one Intoxilyzer 5000 test inadmissible under § 32-5A-194. Therefore, we find no error in the trial court overruling Ewing's objection to the admission of the Intoxilyzer 5000 results on the ground that only one valid test was administered.
Moreover, contrary to Ewing's claim, the failure to lay a predicate pursuant to § 32-5A-194 does not necessarily render the results of an Intoxilyzer 5000 test inadmissible. "[T]he statutory predicate set out in § 32-5A-194(a)(1) is only one way by which the I-5000 test results can be admitted into evidence." McDaniel, 706 So.2d at 1307. An alternative method is for the State to lay the traditional evidentiary predicate, as explained by the Alabama Supreme Court in Ex parte Mayo,652 So.2d 201 (Ala. 1994). Ewing, however, maintains that the State also failed to lay the traditional evidentiary predicate for the admission of the test results. However, Ewing's claim in this regard was not preserved for review. As noted above, at the probation-revocation hearing, Ewing objected to the admission of the test results on the sole ground that only one valid test was administered. He never argued that the State had also not laid the traditional evidentiary predicate. (See Part III of this opinion wherein we address Ewing's claim, in which he concedes that he made no objection on this ground at trial, that his counsel was ineffective for not objecting to the State's failure to lay the traditional evidentiary predicate.) "[T]he general rules of preservation apply to revocation hearings." McIntosh v. State, 762 So.2d 388, 390
(Ala.Crim.App. 1999). Moreover, "[a] specific ground of objection waives all others not specified, and the trial court will not be put in error on a ground not assigned at trial." Grays v. State, 782 So.2d 842, 844
(Ala.Crim.App. 2000). Therefore, Ewing's claim that the State failed to lay the traditional evidentiary predicate for the admission of the Intoxilyzer 5000 result is not properly before this Court for review.
 II.
Ewing also contends that the trial court abused its discretion in revoking his probation because, he says, the State failed to present sufficient evidence to show that he had been driving under the influence. (Issue I in Ewing's brief.)
"The standard of proof in probation revocation hearings is not the same as that in a criminal trial. It is to the `reasonable satisfaction' rather than beyond a reasonable doubt or by a preponderance of the evidence." Hall v. State, 681 So.2d 251, 252 (Ala.Crim.App. 1996), citing Ex parte Belcher, 556 So.2d 366, 368-69 (Ala. 1989). In Ex parteCaffie, 516 So.2d 831 (Ala. 1987), the Alabama Supreme Court stated:
 "`"There is no definite criterion or measure of proof necessary to justify the revocation of one's probation." Wright v. State, 349 So.2d 124
(Ala.Crim.App. 1977). The evidence need not "be strong enough to convince the court beyond a reasonable doubt that the probationer has violated a term of his probation," Carter v. State, 389 So.2d 601
(Ala.Crim.App. 1980); it needs only to reasonably satisfy the court of the truth of the charge. Goodrum v. State, 418 So.2d 942 (Ala.Crim.App. 1982). Absent a gross abuse of discretion, the trial court's ruling in a probation revocation will not be disturbed by this Court. Wright, supra.'"
516 So.2d at 833-34, quoting Rice v. State, 429 So.2d 686, 687
(Ala.Crim.App. 1983).
Ewing's argument regarding the sufficiency of the evidence is based on the assumption that this Court will hold the *Page 204 
Intoxilyzer 5000 results inadmissible. However, we have already determined that the Intoxilyzer 5000 results were properly admitted over Ewing's specific objection. Those results show that Ewing's blood-alcohol level was .20 percent. In addition, Investigator Hamilton testified that she observed Ewing speeding and weaving. The Intoxilyzer 5000 results, coupled with Investigator Hamilton's observations, provided sufficient evidence to reasonably satisfy the trial court that Ewing had violated the terms and conditions of his probation by committing the new offense of driving under the influence.
 III.
Ewing contends that his trial counsel was ineffective. (Issue IV in Ewing's brief.) Specifically, he argues that his counsel should have objected to the admission of the results of the Intoxilyzer 5000 test under the best evidence rule and on the ground that the State failed to lay a proper predicate, namely, the traditional evidentiary predicate. However, Ewing did not present this claim to the trial court. "`[W]e will not make exception to the rule that a claim for ineffective assistance of counsel may not be considered on appeal if it was not first presented to the trial court.'" Brown v. State, 701 So.2d 314, 319-20 (Ala.Crim.App. 1997), quoting Ex parte Jackson, 598 So.2d 895, 897 (Ala. 1992), overruled on other grounds, Ex parte Ingram, 675 So.2d 863, 865 (Ala. 1996). Therefore, this claim was not properly preserved for review.
 IV.
Ewing contends that the trial court's order revoking his probation was inadequate because, he says, the court failed to state what evidence it had relied on in revoking his probation. (Issue III in Ewing's brief.) Although Ewing did not object to the sufficiency of the trial court's order at trial, "`the adequacy of a written order of revocation can be raised for the first time on appeal.'" Durr v. State, 807 So.2d 595,595 (Ala.Crim.App. 2001), quoting Owen v. State, 728 So.2d 673, 680
(Ala.Crim.App. 1998).
It is well settled that "an order revoking probation must be written and must set forth the evidence relied upon, as well as the reason for the revocation in order for due process requirements to be met." T.H.B.v. State, 649 So.2d 1323, 1324 (Ala.Cr.App. 1994). See also Wyatt v.State, 608 So.2d 762 (Ala. 1992); and Armstrong v. State, 294 Ala. 100,312 So.2d 620 (1975). The trial court in this case used a local printed form to record its order. That order read, in pertinent part:
 "The Court receives evidence of the following alleged probation violations from the sources listed:
 "Probation officer and DA: (1) New DUI [driving under the influence] offense.
". . . .
"Based upon the evidence received by the Court, the Court:
 "Is `reasonably satisfied' that the probationer did violate the terms of his probation in the following manner:
"New DUI."
(C. 11.)
Although the trial court's order properly stated the reason for revoking Ewing's probation — that Ewing had committed the new offense of driving under the influence — it failed to adequately state the evidence the court relied on in revoking Ewing's probation. It is well settled that "general recitations by the trial court to its consideration of the `testimony,' `sworn testimony,' or `relevant and competent evidence' presented at the revocation hearing [is] insufficient for purposes *Page 205 
of satisfying" due process requirements. James v. State, 729 So.2d 364,365 (Ala.Crim.App. 1998). Furthermore, "the mere statement in an order that the trial court considered the evidence presented by the state does not satisfy the due process requirements of Rule 27.6(f), Ala.R.Crim.P."Blankenship v. State, 749 So.2d 481, 482 (Ala.Crim.App. 1999). Here, the trial court stated only that it had relied on evidence from the "probation officer and DA." This statement was not sufficient to satisfy due process. See, e.g., Norwood v. State, 804 So.2d 1164 (Ala.Crim.App. 2001) (trial court's order revoking probation was insufficient where the order stated only that the trial court had relied on the testimony of two witnesses and did not identify what that testimony was).
Therefore, based on Armstrong v. State, 294 Ala. 100, 312 So.2d 620
(1975), and Wyatt v. State, 608 So.2d 762 (Ala. 1992), we must remand this cause to the trial court for that court to prepare a written statement of the evidence it relied on in revoking Ewing's probation. The trial court shall take the necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time within 35 days of the release of this opinion.
REMANDED WITH DIRECTIONS.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.