STUART, Justice
(concurring specially).
I concur with the majority’s decision to quash the writ of certiorari in this case. The Court of Criminal Appeals properly concluded that the State had established that the Intoxylizer 5000 (“1-5000”) was in proper working condition when the 1-5000 test was administered to Heflin. Specifically, Trooper Robert Dettmar, an officer in the implied-consent unit of the Department of Public Safety, testified that he had inspected the 1-5000 used to test Heflin both before and after Heflin was tested and that the device was in proper working order. Trooper Dettmar’s testimony satisfies the predicate requirements set forth in Ex parte Mayo, 652 So.2d 201 (Ala.1994), and Steiner v. State, 706 So.2d 1308 (Ala.Crim.App.1997). Indeed, the veracity of Trooper Dettmar’s testimony is bolstered by the admission into evidence of the two inspection forms completed by Trooper Dettmar before and after the administration of Heflin’s test. The lack of additional inspection forms during the period in question provides evidence that the 1-5000 was in proper working condition during that period. The State established the required predicate for the admission of the results of Heflin’s 1-5000 test.
Trooper Dettmar’s testimony that an inspection of the 1-5000 several weeks after Heflin’s test was administered revealed a *162 printer error and the testimony of Officer Jennifer Taylor Whiddon, who operated the 1-5000 during Heflin’s test, about the operability of the machine on the night of Heflin’s test, were factors for the jury to consider and weigh.
My review of the record does not lead me to conclude that the logbooks, which were kept as required by the Department of Public Safety and the Department of Forensic Sciences at the time of Heflin’s I-5000 test, omitted references to the machine’s failure to pass inspection tests of its functioning. A distinction exists between an inspection test, which is performed by a trained member of the implied-consent unit of the Department of Public Safety, and an observation made by an operator when the 1-5000 conducts an internal check when a test is being administered. An inspector is trained to identify the source of malfunctions and to determine whether inaccurate test results are being recorded. Such information is properly contained in the logbook. However, an operator’s conclusion that a machine is not operational merely because the machine aborted a test, which could be the consequence of conditions in the room in which the test is being administered, does not indicate that the machine is not functioning properly. Such a conclusion by an operator who is not trained to determine malfunctions in the 1-5000 should not be reported in the logbook. For example, an operator may observe an 1-5000 shutdown and conclude that the machine is out of order. However, the 1-5000 is designed to shut down and err on the side of caution, not providing an inaccurate test result when the testing conditions are not proper for conducting a test. Such a shutdown does not indicate that the machine is not operational; it indicates that the machine is functioning properly and guarding against inaccurate test results. I reject the contention that logbooks were improperly maintained, which many would have this Court believe.
The trial court did not err in admitting into evidence the results of Heflin’s 1-5000 test. The additional evidence regarding the 1-5000 testing and inspection was properly submitted to the jury for its consideration.