## STATE OF OREGON,
*Appellant,*

*v.*

## DONALD EUGENE BARBER,
*Respondent.*

CR0312321; A126890

149 P3d 260

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

William Uhle argued the cause for respondent. On the brief was Ben Eder.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.*

BREWER, C. J.

---

* Wollheim, J., *vice* Ceniceros, S. J.

## BREWER, C. J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and driving while his license was suspended, ORS 811.182. The state appeals from a trial court order excluding evidence certifying the accuracy of the machine on which defendant performed a breath test.[1] We reverse and remand.

There is no dispute about the facts on which the trial court based its order. As part of proving the DUII charge, the state intends to rely on evidence that a breath test conducted after defendant's arrest showed that defendant had a blood alcohol content of .13 percent, which was over the statutory limit of .08 percent and in itself constitutes being under the influence of intoxicating liquor. ORS 813.300(2). To do so, the state will need to show that the Oregon State Police (OSP) had tested the performance of the machine used for the breath test and certified that it was accurate. ORS 813.160(1)(b)(C). The state's evidence in that regard consisted of certified copies of the written certification of the technician who tested the machine.[2] The technician himself was no longer available to testify. Defendant moved *in limine* to exclude the certification on the ground that admitting it without providing an opportunity to cross-examine the technician would violate his rights under Article I, section 11, of the Oregon Constitution to meet the witnesses against him and under the Sixth Amendment to confront those witnesses. The trial court rejected defendant's constitutional arguments on the ground that the state's proffered evidence was not testimonial under *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004).[3] However, it also concluded that OEC 803(25)(c) entitled defendant to subpoena the technician. Because the technician was not available, the court granted the motion to exclude the evidence.

---

[1] The effect of the trial court's ruling was to exclude evidence of the breath test itself.

[2] The state submitted copies of two separate certifications at the hearing. One was dated shortly before defendant's arrest, and one was dated two and a half months later.

[3] On appeal defendant does not challenge the court's constitutional ruling. *See State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006) (holding that admission of Intoxilyzer certification does not violate state or federal confrontation clauses).

The state moved for reconsideration of the court's ruling, and the court held an evidentiary hearing on that motion. At the hearing, a member of the Implied Consent Unit of the OSP Forensic Services Division explained how technicians test breath machines, how they certify the accuracy of the machines, and how the division prepares certified copies of those certifications. According to the witness, a technician who tests a breath machine will use a computer to instruct the machine to run the test and to report its results. After a successful test, the computer produces a certification document that shows the result of the test; the technician will then sign that document. The original signed certification document remains in an OSP file concerning the tested machine. To make the certification document usable in court, an employee in the Implied Consent Unit prepares a number of certified copies of that document and sends them to the district attorney in the county where the machine is located. Each certified copy is a photocopy of the signed original in the OSP file. The employee stamps the state seal and a statement that the photocopy is a true copy of the original on the photocopy and then signs the stamped statement.

Based on that evidence, the trial court concluded that the certification was produced by data retrieval from a computer system that the OSP maintained and operated. It therefore denied the motion for reconsideration and adhered to its previous order excluding the evidence on the ground that the state had not satisfied the requirements of OEC 803(25) for the admissibility of the copy of the certification. The state appeals from the denial of reconsideration.

■ The issue on appeal is which of two statutory exceptions to the hearsay rule governs the admissibility of the document that the state offered as evidence. The parties agree that the original certification itself—and, thus, necessarily the certified copy—is hearsay under OEC 801(3). It is a statement, other than one made by the declarant while testifying at trial, that the state offers to prove the truth of the matter asserted. It is therefore inadmissible under OEC 802 unless it satisfies one of the exceptions to the hearsay rule. The state argues that the certification is admissible under the public records exception codified in OEC 803(8). That rule applies

whether or not the declarant is available as a witness and makes admissible

> "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth:
>
> "* * * * *
>
> "(b) Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and other law enforcement personnel[.]"

OEC 803(8). In *State v. Smith*, 66 Or App 703, 675 P2d 510 (1984), we held that documents certifying that breath test equipment was in proper operating order were admissible under that subsection. We held that the provision in the rule concerning matters observed by police officers referred to officers' observations in the course of investigating crime, not the routine function of testing breath test equipment to ensure that it is accurate. *Id.* at 707. Based on *Smith*, the state argues that the certification in this case is also admissible.

■ Defendant argues that the legislature imposed more stringent criteria for the admissibility of breath test certifications under ORS 813.160(1)(b)(C) when it adopted OEC 803(25)(a), which provides an exception for

> "[a]ny document containing data prepared or recorded by the Oregon State Police pursuant to ORS 813.160(1)(b)(C) or (E), or pursuant to ORS 475.235(4), if the document is produced by data retrieval from the Law Enforcement Data System or other computer system maintained and operated by the Oregon State Police, and the person retrieving the data attests that the information was retrieved directly from the system and that the document accurately reflects the data retrieved."

The remainder of OEC 803(25) provides:

> "(b) Any document containing data prepared or recorded by the Oregon State Police that is produced by data retrieval from the Law Enforcement Data System or other computer system maintained and operated by the Oregon State Police and that is electronically transmitted through public or private computer networks under an electronic signature adopted by the Oregon State Police if the

person receiving the data attests that the document accurately reflects the data received [is not excluded by the hearsay rule].

"(c) Notwithstanding any statute or rule to the contrary, in any criminal case in which documents are introduced under the provisions of this subsection, the defendant may subpoena the analyst, as defined in ORS 475.235(6), or other person that generated or keeps the original document for the purpose of testifying at the preliminary hearing and trial of the issue. Except as provided in ORS 44.550 to 44.566, no charge shall be made to the defendant for the appearance of the analyst or other person."

OEC 803(25)(c) requires that the defendant have an opportunity to subpoena the person who created or keeps the original document, while OEC 803(8)(b) does not contain such a requirement. The parties argue about whether OEC 803(25) supersedes or supplements OEC 803(8)(b) in this case. Before reaching that issue, however, we must consider whether OEC 803(25)(a) applies at all to the document at issue in this case.[4] We conclude that it does not.

The legislature adopted what is now OEC 803(25)(a) in 1995. Or Laws 1995, ch 200, § 1. Four years later, it adopted the rest of OEC 803(25), including the requirement that the defendant have an opportunity to subpoena the person who created or keeps the original document. Or Laws 1999, ch 674, § 1. Because OEC 803(25)(a) is the crucial subsection, and because it was adopted at a different time from the other subsections, we consider it by itself. That subsection creates an exception to the hearsay rule for a document that contains material that the OSP prepares or records pursuant to two specific statutes *if* the document being offered was itself "produced by data retrieval from the Law Enforcement Data System or other computer system maintained and operated by the Oregon State Police" *and* the person retrieving the information attests "that the information was retrieved directly from the system and the document accurately reflects the data retrieved." *Id.* The statutory wording is clear. It describes a document that was itself produced by

---

[4] Subsection (b) is inapplicable on its face; it applies only to documents that are electronically transmitted under an electronic signature adopted by the OSP. That circumstance does not exist here.

data retrieval; the rule refers to the original of a document, not to a copy. The attestation that is necessary for the document to be admissible is that the information came directly from the computer system and accurately reflects the data retrieved. In short, the rule applies to a new document created in order to make the information on the computer system available at trial. It does not apply to a pre-existing document that someone could copy and certify.

Until the adoption of OEC 803(25)(a), there was no clear way to present as evidence in court breath test certifications that existed only as data on the computer system. By permitting the use of an original document created directly from the data stored on a computer, OEC 803(25)(a) provided a way to do so. It thus dealt with something that the existing public records exception in OEC 803(8) did not cover.

Creating an exception to the hearsay rule, however, was not in itself sufficient to make the new document admissible. Because the new kind of document was not a copy of an existing paper public record, the existing self-authentication provisions for public records did not apply. *See* OEC 902(1). For that reason, the legislature adopted a new self-authentication rule, OEC 902(12)(a), in the same bill in which it enacted OEC 803(25)(a). Or Laws 1995, ch 200, § 2. That rule provides that a document that meets requirements that are identical to those in OEC 803(25)(a) is self-authenticating. The statute thus was part of a package that provided a way to take data from a computer and present it in court without the intermediate step of creating a document that would qualify as a public record and then preparing a certified copy of that document.

The legislative history of the statute makes the legislature's intent clear.[5] The OSP sponsored Senate Bill (SB) 117, which became chapter 200 of the 1995 Oregon Session Laws. Sergeant Mike Dingeman of the OSP's Implied Consent Unit described the reasons for the bill to the House subcommittee that considered the final version. Its purpose, he explained, was to provide a way for the police to make breath

---

[5] The state has presented the relevant portions of the legislative history in its brief, and we find that history helpful in understanding the statute. *See* ORS 174.020.

test machine certifications available to prosecutors electronically. Previously, certifications were hard paper copies that the OSP filed manually and provided on request. OSP now stores the information on a central computer, with access available to law enforcement agencies and others through the Law Enforcement Data System. Two things, he said, were necessary in order to transfer the certifications electronically so that they would be immediately available to prosecutors. First was an amendment to ORS 18.160 so that it would no longer require the technician to sign the certification; second was an amendment to the hearsay rules so that persons with access to the system could retrieve the certification record directly from the system in a way that would be admissible in court. Another bill considered in the same session, which became Oregon Laws 1995, chapter 351, made the first change. SB 117 made the required change to the hearsay rule. Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, SB 117, May 2, 1995, Ex B (statement of Mike Dingeman). Dingeman's explanation, and a substantially similar one that a different police officer made to the Senate committee, was the only substantial information concerning the purpose for the bill that the legislature heard or discussed.

In short, the express purpose of OEC 803(25)(a), as the legislature understood it, was to make admissible unsigned certifications of breath test machines taken directly from the state police computer. It had nothing to do with certified copies of signed certifications; under OEC 803(8) and our decision in *Smith*, there was no need to change the law concerning them. The statute added a new exception for a new kind of document; it did not change the rule concerning existing exceptions for older kinds of documents.

The trial court apparently based its decision, at least in part, on the fact that the technician used a computer to conduct the test of the breath machine and to produce the certification document that the technician signed. The court concluded that those facts meant that the certified copy offered as evidence was produced by data retrieval from a computer system. It is clear from our discussion of both the words of the statute and the legislative history that that conclusion was incorrect. OEC 803(25)(a) applies to a document

that is itself created by data retrieval rather than by copying an existing document; if the proffered evidence is a certified copy of an existing document, the process involved in creating the original document is irrelevant. It is also irrelevant how the original data were created.

The testimony before the trial court indicates that, despite the adoption of OEC 803(25)(a), the OSP keeps breath test certification records as hard copies, not as data on a computer. Thus, the certified copy that the state offered in this case was created by the traditional method of copying a public record and certifying its authenticity and accuracy. It was not created by data retrieval in the sense that OEC 803(25)(a) uses the term. Rather it was admissible under the traditional public records exception of OEC 803(8), as we construed it in *Smith*. Under that rule, the admissibility of the document did not depend on defendant's ability to subpoena the technician who conducted the test. The trial court erred in ruling otherwise.

Reversed and remanded.